(No. 41604.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs*.
RUDOLPH JOHNSON, Appellant.

*Opinion filed May 20, 1970.*

GERALD W. GETTY, Public Defender, and WILLIAM J. MARTIN and JAMES B. HADDAD, all of Chicago, (THEODORE A. GOTTFRIED, Assistant Public Defender, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and ANTHONY J. MONTEMURRO, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Rudolph Johnson, was convicted of armed robbery in the circuit court of Cook County on March 13, 1968. On this direct appeal, defendant raises a variety of questions concerning the admissibility of an oral confession, recovered goods and identification testimony. There is no claim made that the evidence, if properly admitted, was insufficient to prove guilt.

The robbery. for which defendant was convicted occurred at approximately 8:10 P.M. on March 4, 1967. The victims, Mrs. Bernice Johnson and her sister, Miss Barbara Green, were approached from behind by a man armed with a gun. He was wearing a black trench coat, and his face was partially masked by a knit cap and a scarf. He stuttered as he demanded that the victims turn over their property. The victims complied with his demands, and later reported the robbery to the police. Neither of the women related to the investigating officer any details of the robber's facial features, except to note that he was a medium to dark com-

plected Negro, but did give a rough approximation of his height, weight and age. They also noted that he stuttered.

In June of 1967, a similar robbery occurred, and the offender was chased by a citizen until lost in the neighborhood of defendant's apartment. The chase was observed by a woman who recognized the offender as a tenant of her apartment building, and she so advised the police. Later she determined that the party was Rudolph Johnson, and advised Detective Durkee of his name on June 4, 1967. Durkee and several other officers had kept the building under surveillance for several days, and on July 5 and 6 interviewed several persons in the building regarding Johnson's appearance and his stuttering. Believing that Johnson was a likely suspect, detectives Durkee and Nesis, accompanied by officers Butz and Brasky, knocked at the door of his second floor apartment at 5:30 P.M. There was no answer, and they decided to stake out the building to await his return. At 8:30 he arrived and entered his apartment. Thereupon Durkee and Nesis knocked on the apartment door; Johnson opened the door; the detectives announced their office and entered, arresting Johnson. The other officers entered shortly thereafter.

Once in the apartment, Durkee informed defendant of his constitutional rights. Officer Butz testified Johnson said, "Eventually, you were going to catch me, I'm glad it's now;" and "I have been hiding a long time." When again advised of his right to counsel, defendant answered, "I don't want no lawyer." Meanwhile, the other officers were searching other rooms of the apartment, and uncovered numerous items believed to be stolen property. After approximately 30-45 minutes, the officers took Johnson to the police station. Again he was informed of his rights, and he signed a written waiver of his rights. Later, when Johnson learned that he was to appear in a lineup that evening, he asked, "Don't I supposed to have someone in my behalf before I go through these lineup procedures?" Defendant contends, and

the testimony of one officer agrees, that he was then informed that an attorney would be appointed for him when he appeared in court, but that the police could not provide an attorney. At some point in the same conversation defendant admitted during questioning that the recovered goods were not rightfully his and again made a general expression of relief at being apprehended.

Defendant was then placed in a lineup the evening of his arrest, and two more lineups the next day. At the first of the two July 7 lineups, the victims of several robberies, including Mrs. Johnson and Miss Green, were present. About fifteen minutes prior to the lineup, the police asked the ladies to examine some goods displayed on a table. Miss Green discovered several items stolen from her on March 4. The lineup commenced, and five men of roughly similar stature appeared. They tried on various articles of clothing, turned around, *et cetera*. After several minutes, Mrs. Johnson suggested that the lineup participants speak a phrase used by the robber. They did so; defendant stuttered and the two women pointed him out as the robber. Mrs. Johnson recalled defendant's reaction: "Yes, after I touched him he turned around and the detective asked him if he remembered me, and he said yes. He said, 'I remember these two young ladies.' Me and my sister was standing there. And he point to me. He said, 'She had two kids with her the night I robbed her.' Then he said, 'I didn't touch you, did I, Miss? Did I, Miss?' I said, 'No, You didn't do anything else.'" The detective then told the ladies that the stolen goods had been recovered from defendant.

A series of indictments were returned against Johnson by the grand jury on July 19, 1967, including the robbery charge in issue here. On July 25 defendant appeared in court and the public defender was appointed. Several motions were filed thereafter to suppress the various confessions, the lineup and anticipated in-court identifications of defendant, and the physical evidence. Defendant succeeded

only in suppressing the lineup identifications. At trial, Mrs. Johnson identified defendant and the items taken from Miss Green. One of the officers identified those items as having been found in Johnson's apartment, and also related Johnson's station-house confession. A defense motion sought suppression of Mrs. Johnson's identification or alternatively sought approval for the introduction of the lineup circumstances in an effort to discredit Mrs. Johnson's in-court identification by showing the allegedly suggestive circumstances of her first identification. The motion was denied on the grounds that all such evidence concerning the lineup had been suppressed. Following testimony of several witnesses relating defendant's character and reputation, the case was submitted to the jury. The jury failed to agree upon a verdict, was subsequently discharged, and a mistrial declared. The case was then submitted to the judge for decision upon a stipulation that the evidence theretofore adduced would be the basis for the determination. The court found defendant guilty and sentenced him to a term of 3 to 7 years.

The issues promulgated by defendant on appeal concern much evidence as to which the denial of motions to suppress allegedly constituted error. Some of this evidence was not introduced at trial, and in view of our disposition of the case, it is not necessary to consider evidence which was not used.

Defendant contends first that the recovered goods were tainted by an unlawful invasion of his apartment, and consequently were inadmissible. This contention is based upon the claim that since the officers entered the premises without an arrest warrant or a search warrant, and without defendant's consent, there was no authority for the entry. The State does not claim that they entered upon consent, or under the authority of a warrant, but nevertheless maintains that the entry was lawful. We agree. Defendant argues, incorrectly, that a warrantless entry is permissible only in

hot pursuit, or in any emergency when it is impractical to obtain a warrant. We agree that it is desirable for an arrest to be based upon a warrant when the circumstances permit, and such action here would have eliminated some of the problems now before us. At the same time, however, we recognize that an arrest may be lawful when based upon probable cause, notwithstanding the absence of a warrant. (Ill. Rev. Stat. 1967, ch. 38, par. 107—2(c).) In this case, it is important to recognize that prior to arriving at the apartment, earlier identified as defendant's, the arresting officers already had reasonable grounds to believe he had committed a crime; and when he opened the door the officers were able to verify his description as well as confirm that he was present in the identified apartment. This is not a case when probable cause was developed only as a result of an unlawful entry, and authority to the effect that an entry cannot be justified by its fruits is inapplicable. (See *Johnson* v. *United States,* 333 U.S. 10, 92 L. Ed. 2d 436, 68 S. Ct. 367; *People* v. *Bussie,* 41 Ill.2d 323; *People* v. *Bankhead,* 27 Ill.2d 18.) Since the basis for a valid arrest existed prior to the entry, the entry was clearly justified under section 107—5(d) of the Code of Criminal Procedure (Ill. Rev. Stat. 1967, ch. 38, par. 107—5(d)): "All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to make an authorized arrest." (*People* v. *Macias,* 39 Ill.2d 208, 214-15, *cert.* denied, 393 U.S. 1066, 21 L. Ed. 2d 709, 89 S. Ct. 721; see also *Ker* v. *California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623; *People* v. *Wright,* 41 Ill.2d 170, *cert.* denied, 395 U.S. 933, 23 L. Ed. 2d 448, 89 S. Ct. 1993; *People* v. *Barbee,* 35 Ill.2d 407; *People* v. *Scott,* 110 Ill. App. 2d 368.) The search and seizure thus cannot be barred as being tainted from the outset by an unlawful invasion.

Defendant next contends that even in the event the entry was lawful for purposes of arrest, the warrantless

search should not be upheld as incident to the arrest since the search was conducted in various rooms of the apartment while defendant was detained in other rooms. The law relating to the permissible scope of a search incident to arrest has long been in flux, and as observed in *Chimel* v. *California*, 395 U.S. 752, 755, 23 L. Ed. 2d 685, 89 S. Ct. 2034, 2036, the United States Supreme Court decisions bearing on the issue have been far from consistent. If the search involved here were subject to the subsequent rulings in *Chimel*, there would be little question that it exceeded the proper scope of a search incident to arrest. But defendant argues that even before *Chimel*, a search as broad as this was impermissible. We have not interpreted the pre-*Chimel* authority restrictively, but rather have looked to the circumstances in evaluating the validity of an allegedly too-broad search. The reasonableness of the search has been the pivotal factor, as it was in the United States Supreme Court decision in *United States* v. *Rabinowitz*, 339 U.S. 56, 94 L. Ed. 653, 70 S. Ct. 430. (See, *e.g.*, *People* v. *Braden*, 34 Ill.2d 516; *People* v. *Harvey*, 27 Ill.2d 282; *People* v. *Boozer*, 12 Ill.2d 184; *People* v. *Tillman*, 1 Ill.2d 525; *People* v. *McGowan*, 415 Ill. 375; see also *Leahy* v. *United States* (9th cir. 1959), 272 F.2d 487; *Townsend* v. *United States* (4th cir. 1959), 271 F.2d 445; *Smith* v. *United States* (D.C. cir. 1958), 254 F.2d 751; and see *Harris* v. *United States*, 331 U.S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098.) Weighed under the applicable pre-*Chimel* standards, we are of the opinion that the search in this case was reasonable. Defendant was arrested in his home, and there was reason to believe he had perpetrated numerous armed robberies over a period of several months. Not only was it reasonable to search the entire premises for the gun used in the commission of these offenses, but it was also reasonable to expect the fruits of the crimes to be discovered on the premises. Therefore, we conclude that the stolen goods

were recovered in a reasonable search incident to a valid arrest made upon a lawful entry, and the goods were properly admitted in evidence.

We move now to the next item of evidence introduced at trial and objected to by defendant: the oral confession made upon arrival at the station house. Defendant concededly was twice advised as to his right to counsel, and waived the right both orally and in writing prior to any interrogation at the station. However, defendant contends that these warnings and the waiver of the right to counsel were vitiated prior to the inculpatory statement. The testimony is clear that at some point in a conversation between defendant and the arresting officers, defendant was told he could have an attorney appointed when he appeared in court, but that the police could not provide an attorney. There is also no doubt that the confession was made during that conversation. However, notwithstanding defendant's assertion that "There is no dispute that the conversation about the defendant's rights occurred prior to his admissions", we find the record far from conclusive on this critical factor of the sequence of the conversation. Defendant's own recollection of the events at the station was clearly faulty in some respects, and inconsistent in others. There is no doubt that the confession and the challenged warning both preceded a lineup on the night of the arrest. When asked if he was advised of his rights to counsel before *interrogation* at the station, the following exchange occurred: "I asked them, 'Don't I supposed to have someone in my behalf *before I go through these lineup procedures?'* And they told me one would be appointed at the County Jail if I couldn't afford one." (Emphasis added.)

> "Q. Did they tell you when you would be going to the County Jail?
>
> A. Yes, they told me I would be going the next day.
>
> Q. Now, what was the next thing that occurred?
>
> A. They took me out before the lineup."

This then is the context of the warning which defendant now says undisputedly preceded not only the lineup, but the interrogation as well. It seems more likely that such an exchange would be prompted by the termination of questioning and the preparation for the lineup which followed. The challenged warning can have no effect upon a confession already made, and it appears that the trial court denied the *Miranda* motion after concluding that the confession had in fact preceded the officer's misleading advice. Since the trial court found, upon evaluating the facts, that the confession was made in full compliance with the dictates of *Miranda,* we see no basis for reaching a contrary conclusion on review. *People* v. *Nicholls,* 42 Ill.2d 91 ; *People* v. *Armstrong,* 41 Ill.2d 390; *People* v. *Daily,* 41 Ill.2d 116.

The final challenge to the admissibility of evidence introduced at trial is directed at Mrs. Johnson's in-court identification of defendant. Defendant contends that the State failed to show clear and convincing proof that the victim's identification of defendant was derived from an observation independent of the lineup encounter. Thus, it is argued, the identification was inadmissible due to the failure to comply with the strictures of the *Wade, Gilbert* and *Stovall* cases. (*United States* v. *Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert* v. *California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 ; *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.) The State contends, under the authority of our decision in *People* v. *Palmer,* 41 Ill.2d 571, that the *Wade-Gilbert* rulings are inapplicable since the lineup in this case occurred prior to indictment. The defendant concedes that *Palmer* is dispositive here, but urges that it be overruled. While defendant challenges the identification under *Stovall* as well, we are not prepared to find it insufficient and therefore need not discuss the defendant's argument as to *Palmer.*

At trial, defendant sought to present to the jury the allegedly suggestive circumstances of the lineup. It was ap-

parently felt that to do so would serve to weaken the credibility of the victim's identification in court. The trial court refused to allow disclosure of the circumstances, ruling that all such evidence had been barred by defendant's successful motion to suppress the lineup identification. Irrespective of the validity of the exclusionary ruling, however, it can scarcely be argued that the lineup circumstances would, if shown, have had any effect other than to conclusively persuade the trier of fact of defendant's guilt. In this context, we find no prejudice to defendant in the trial court's ruling prohibiting a showing of those circumstances.

There being no prejudicial error shown, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*