THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES TRULL, a/k/a Douglas Edward Trull, Defendant-Appellant.

Fourth District   No. 14850

Opinion filed September 15, 1978.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur, for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

Burglary conviction, 4-20 years.

Search and seizure.

Can police use keys found at the scene of a burglary to open a locked door to an apartment building and then enter common areas and hallways therein?

No.

We reverse and remand.

The record tells us the following story: Decatur Police Officer Dennis Harris received a police radio dispatch informing him that someone was attempting to break into an apartment at 2480 N. Graceland in Decatur. Officer Harris proceeded to that address, discovered the defendant on the balcony of an apartment building attempting to forcibly gain entry to one of the apartments and noticed that Trull had a television set in his

possession. Trull explained that he lived in the apartment, had lost his keys, and was merely trying to get in. Officer Harris ran a check of defendant's story and learned that Charles Trull (born in the month of March) did in fact reside at 2480 N. Graceland.

With Trull apparently exonerated, Officer Harris continued on his patrol until he heard another radio report informing him that Officer Bly was investigating a burglary on the other side of Decatur and had discovered a set of keys in connection with his investigation. Bly reported that a medallion on the key ring had the word "Pisces" inscribed upon it. Furthermore, Bly reported that the burglary included the theft of two television sets.

Officer Harris recognized that defendant's March birthday corresponded to the astrological sign of "Pisces" and—after matching other peculiar facets of his earlier encounter with Trull to the burglary report of Officer Bly—he and other officers proceeded to Trull's apartment building, taking the keys discovered at the scene of the burglary. The officers made no attempt to procure a warrant, either arrest or search.

The police arrived at Trull's apartment building at about 1:30 a.m. and found the apartment building door locked. Officer Harris inserted one of the keys into the keyhole and successfully turned the lock. The officers then opened the door and proceeded to Apartment Number 7, the apartment number Trull had given Officer Harris.

The officers knocked at the apartment door, and upon receiving no answer, used another one of the keys found at the scene of the burglary to unlock the door, opened the door slightly, announced that they were police officers, and called for defendant to come and answer the door. Trull responded that he was going to get some clothes on. After waiting for a period of time sufficient to allow defendant to get clothed and come to the door, the officers pushed open the apartment door and observed Trull coming out of the bedroom. The officers then entered the apartment and arrested Trull. A subsequent search of the apartment uncovered many of the articles that had been stolen in the burglary.

On appeal, defendant raises issues involving the initial entry into the apartment building, the subsequent entry into defendant's individual apartment, and whether the ensuing search of Trull's apartment was pursuant to a voluntary consent. We need only consider the first issue since we find the police officers' initial warrantless entry into defendant's locked apartment building violated Trull's fourth amendment rights and therefore any evidence found after the officers entered the apartment building must be suppressed.

To reach this result, however, it is necessary for us to examine three questions which are raised by the police officers' warrantless entry into the

locked common entry and hallway of the apartment building. I. Does the mere insertion of a key into a door lock constitute a "search" under the fourth amendment? II. Are the common entries and hallways of a locked apartment building constitutionally protected? III. Assuming that such common areas are protected, did the circumstances in the instant case justify a warrantless entry into the building?

## I. INSERTION OF THE KEY

We first address the question of whether the mere insertion and turning of a key in a lock—without actually opening the door—is a search. At the threshold, we note the paucity of authority in this area. Two cases, however, have squarely addressed the issue and have reached diametrically opposite conclusions.

In the Illinois appellate decision of *People v. Carroll* (1973), 12 Ill. App. 3d 869, 299 N.E.2d 134, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1144, 94 S. Ct. 3180, a fleeing robber dropped his keys while making his escape. Later, a suspect (named Carroll) was apprehended and police officers went to Carroll's apartment and inserted one of the keys into the door lock, successfully turning the tumbler. The police officers did not open the door but, instead, rang the doorbell and were given consent to enter the apartment. At trial, defendant moved to suppress the State's evidence concerning the fact that the key had successfully turned the tumbler in the lock. The appellate court did not accept Carroll's argument and held that the insertion of a key into a lock was not a "search." The court, however, tempered its pronouncement by stating that it would be an entirely different situation if the officers had used the key to enter the defendant's apartment and search it.

Directly contrary to the *Carroll* opinion is the Ninth Circuit Court of Appeals case of *United States v. Portillo-Reyes* (9th Cir. 1975), 529 F.2d 844. In fact, the dissent in that case uses the *Carroll* opinion to refute the position taken by the majority. The majority concluded that the mere insertion of the key into the door of the defendant's car in order to discover whether it fit constituted the beginning of a search. That court accordingly held that the evidence of the key fitting the automobile lock should have been suppressed.

These polarized opinions each reflect plausible conclusions to an intriguing question. However, we find the logic of the *Carroll* opinion to be the more persuasive and a more solid footing for what we perceive to be a sound result.

██ █ The fourth amendment protects people against "unreasonable searches and seizures." It has been held that a search implies prying into a hidden place for that which is concealed, or an invasion and quest with some sort of force, either actual or constructive. (*City of Decatur v.*

*Kushmer* (1969), 43 Ill. 2d 334, 253 N.E.2d 425.) Here, the officers were not "invading" the premises by merely inserting the key into the lock. Instead, they were carrying out legitimate investigative functions. The obtaining of information or evidence by officers who are where they have a right to be, with a legitimate reason, in the course of their duties, is not a search. *Carroll;* see *United States v. Graham* (6th Cir. 1968), 391 F.2d 439; *United States v. Johnson* (5th Cir. 1969), 413 F.2d 1396; *United States v. Gunn* (5th Cir. 1970), 428 F.2d 1057; *United States v. Williams* (5th Cir. 1970), 434 F.2d 681.

This reasoning is in accord with the dissent in *Portillo-Reyes* which stated:

> "The insertion of the key into the door of the vehicle was a minimal intrusion, justified by founded suspicion and in furtherance of the legitimate interests of proper crime investigation, and did not constitute a search within the meaning of the Fourth Amendment." *Portillo-Reyes* (9th Cir. 1975), 529 F.2d 844, 852.

## II. ENTRY INTO COMMON AREAS

But, even though the officers lawfully inserted and turned the key in the lock, it does not follow, *a fortiori,* that the officers could open the door and proceed into the apartment building. This raises the second question that was posed at the head end of this opinion: Are the common entries and hallways of a locked apartment building constitutionally protected? We say yes.

A person's legitimate expectations of privacy are to be protected. (*Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507.) Federal cases have indicated that the common areas of a locked apartment building are protected under the fourth amendment. (*United States v. Carriger* (6th Cir. 1976), 541 F.2d 545; *United States v. Fluker* (9th Cir. 1976), 543 F.2d 709; *United States v. Case* (7th Cir. 1970), 435 F.2d 766; *United States v. Blank* (N.D. Ohio 1966), 251 F. Supp. 166.) And, in spite of the State's protestations, the *Carroll* case is not persuasive authority to the contrary since the entrance to the apartment building in *Carroll* was apparently unlocked. We discern a marked difference between an individual's expectation of privacy in a locked apartment building as compared to an unlocked one. It seems rather elementary to us that a locked door is a very strong manifestation of a person's expectation of privacy. Thus, we conclude that the common entries and hallways of a locked apartment building are protected by the fourth amendment.

## III. FAILURE TO PROCURE WARRANT

This brings us to the final question of our tripartite inquiry, namely:

Was there sufficient justification for the warrantless intrusion by the police officers into defendant's apartment building? Recently, our sister court in the Third District held that a warrantless search was a violation of the fourth amendment unless exigent circumstances existed to obviate the requirement of a warrant. (*People v. Wolgemuth* (1976), 43 Ill. App. 3d 335, 356 N.E.2d 1139.) The Supreme Court of Illinois reversed the appellate court *but* specifically left open the question of whether exigent circumstances were required to justify a warrantless entry. (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067.) In so doing, our supreme court noted that although its Federal counterpart has consistently reserved judgment on the constitutionality of a warrantless entry into a home to make an arrest absent exigent circumstances, at least five Federal courts of appeal have acknowledged that such warrantless entries may be unconstitutional.

Recently, our court confronted the issue in *People v. Abney* (1978), 58 Ill. App. 3d 54, 373 N.E.2d 861, *appeal allowed* (1978), ___ Ill. 2d ___. In view of the lack of a direct ruling by either the United States or Illinois Supreme Courts, our court decided that the law must develop on a case by case, *ad hoc* basis. However, we did state that more than mere probable cause must exist before officers can make a warrantless entry to effect an arrest.

In order to constitute "more than mere probable cause" each case must be examined to determine if the following factors are present: (1) A grave offense is involved, particularly one that is a crime of violence; (2) the suspect is reasonably believed to be armed; (3) there exists not merely the minimum of probable cause that is required when a warrant has been issued but beyond that a clear showing of probable cause, including "reasonably trustworthy information" to believe the suspect has committed the crime involved; (4) strong reason exists to believe that the suspect is in the premises being entered; (5) there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry is forcible or peaceful, and (7) the time of entry (day or night). See *Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385.

Here, there are a plethora of insufficient facts to support a warrantless arrest. Consider: (1) the offense was burglary and not an offense of grave violence; (2) there was no reason to believe that the defendant was armed; (3) there was probably sufficient probable cause to arrest; (4) there was some reason to believe that defendant would be in his own apartment, because as the police testified, most people would be asleep at that time; (5) there is absolutely no indication in the record that the defendant was likely to escape or that the police actions were due to exigent circumstances; (6) the officers entered the apartment by use of a key rather than breaking the door down; and (7) the entry occurred at

1:30 a.m. These facts are clearly insufficient to excuse the police officers' failure to obtain a search warrant. See *Abney; People v. Sanders* (1978), 59 Ill. App. 3d 6, 374 N.E.2d 1315.

■■■ In conclusion, the insertion and turning of the key in the apartment building door was not a search. However, the warrantless entry that followed was an unjustified intrusion into an area protected by the fourth amendment. *Ergo*, any evidence gathered as a result of this illegal entry must be suppressed as fruit of the poisonous tree. *Wong Sun v. United States* (1963), 321 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.

Reversed and remanded for a new trial.

GREEN, P. J., and REARDON, J., concur.