THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JIMMY BEAN *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 78-875, 78-876 cons.

Opinion filed June 29, 1979.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Burton A. Brown, of Chicago, for appellee Jimmy Bean.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellees Jessie Byrd and Frank Byrd.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is an appeal by the State, pursuant to Supreme Court Rule 604(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 604(a)), of the trial court's quashing of the arrest and suppressing of the statements of defendant, Jimmy Bean, and the quashing of the arrests and suppressing of the identifications of defendants, Frank and Jesse Byrd. The State contends that the trial court erred when it found that there was no probable cause to arrest Bean in his apartment and when it based its ruling with respect to the Byrds on this erroneous finding. We reverse and remand.

On April 29, 1977, the trial court conducted a hearing on a motion to quash the arrest of defendant, Jimmy Bean. Officer Thomas Lahm testified that he had been assigned to investigate an armed robbery of a cleaning store which had occurred on March 5, 1975. Two men had gone into the cleaners with a sawed-off shotgun and a pistol and had taken records and money. On March 6, Lahm telephoned Lucinda Birmingham, whose name, address, and telephone number had appeared on a police report of the March 5 incident, and spoke to her about what had happened. She told him that while she was standing across the street from the cleaners, she saw two men run from the cleaners, join two other men who were outside the cleaners, and then saw all of them run from the scene. After they had gone, she went into the cleaners and found out that an armed robbery had been committed. She told Lahm that one of the men who had been outside the cleaners was defendant with whom she had previously gone to school. She told him that defendant was 17 or 18 years old and that he lived in the vicinity of Keeler (4200 West) and Gladys.

Sometime between March 6 and March 13, Lahm checked the police "alpha file" and discovered that a person with defendant's name had been arrested for burglary by the Oak Park Police in June of 1974 and had given his address as 4211 West Gladys. Although Lahm could not recall precisely when he checked the alpha file, he stated that it normally takes anywhere from a couple of minutes to a couple of hours to make the check. Also, between March 6 and March 13, Lahm visited schools in the area of 4211 West Gladys and he learned that defendant had gone to a

school at Van Buren and Keeler and had listed his address as 4211 West Gladys.

At approximately 8 a.m. on March 13, Lahm and three other officers arrived at 4211 West Gladys without a warrant. Lahm said that he went there to arrest defendant, but he also said that he was not sure if defendant would be there. He went to the front of the house with one of the officers and the other officers went to the rear. After he had knocked on the door and announced his office, defendant's mother came to the door. Lahm asked her if her son lived there and if he could talk to him. She permitted Lahm and the other officer to enter the apartment after she had dressed. When they entered the apartment, neither of them had his gun drawn. Lahm said that he never did draw his gun while he was in the apartment because he never knew that defendant would be armed. He first testified that defendant's mother told him that defendant was in the bedroom. Later, he testified that he was not sure if she told him that defendant was in the bedroom. In either event, he did say that defendant did come out of the bedroom. He told defendant that he was under arrest for the robbery of the cleaners. Lahm stated that he never entered the bedroom to make the arrest.

Lillie Bean, defendant's mother, testified that she only permitted the plainclothes police officers to enter the vestibule to her apartment and told them to wait there until she put on her robe. After she had put her robe on, she told them that she would go and get her son. At that point, one of the officers ran past her with his gun in hand. She asked him where he was going, and when he did not stop, she began crying. She asked the officers what they wanted with her son, but they offered no explanation. The officers then went into defendant's bedroom and told him to get out of bed. They then brought defendant into the living room and told Mrs. Bean that they were arresting him for armed robbery.

After hearing the testimony, the trial court found no probable cause and sustained the motion to quash the arrest.

On May 6, 1977, the trial court held a hearing on a motion to suppress certain statements given by defendant after his arrest. Officer Lahm testified that five minutes after the arrest, defendant gave him an oral statement. After he had taken him to the police station, defendant gave a written statement containing substantially the same information as was contained in the earlier oral statement.

At the close of the May 6 hearing, the trial court entered an order sustaining the motion to suppress the statements as fruits of the illegal arrest. The court continued, however, a question concerning the voluntariness of the statements.

On October 27, the trial court commenced a hearing on a motion to

quash the arrest and suppress the identification of defendants, Frank and Jesse Byrd. At the hearing, it was stipulated that when the police arrested defendant, Jimmy Bean, their investigation had not yet focused on Frank and Jesse Byrd. After Bean's arrest, he gave a statement that the Byrds participated in the armed robbery with him. The Byrds were arrested at 4132 West Van Buren 10 minutes after this statement had been given. Later in the day, the Byrds took part in a lineup and were identified as being participants in the armed robbery.

After this stipulation was read, the trial court sustained the motion to quash the arrests and suppress the identifications on grounds that the illegal arrest of Bean led to the arrest and identification of the Byrds.

OPINION

The State contends that the trial court erred when it quashed Bean's arrest and suppressed his statements because there was probable cause to arrest him in his apartment. It also contends that since there was probable cause to arrest Bean, the trial court's ruling sustaining the Byrds' motion to quash and suppress should be reversed since it was based on the erroneous ruling that Bean's arrest was illegal. We agree with both of the State's contentions.

I

■ The State's first contention actually raises two separate questions: (1) whether the police had probable cause to arrest Bean on March 13; and (2) whether probable cause is sufficient to make an arrest in one's private dwelling place. A police officer has probable cause for an arrest when he "has reasonable grounds to believe that the person is committing or has committed an offense." (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c).) In determining whether there are reasonable grounds to believe that a person has committed an offense, a court must consider all of the circumstances known to the police officer at the time of the arrest. (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) In considering these circumstances, a court must not be unduly technical because the question of probable cause involves probabilities and not certainties. *Clay.*

■ At the time of Bean's arrest, Officer Lahm knew from his conversation with Birmingham that *a* Jimmy Bean had fled the scene of the armed robbery with three other men. He also knew from this conversation that *this* Jimmy Bean was 17 or 18 years old, lived in the vicinity of Keeler (4200 West) and Gladys, and had gone to school with Birmingham at one time. He had discovered from the police alpha file that *a* Jimmy Bean had previously been arrested for burglary in 1974 and had given 4211 West Gladys as his address. He had also discovered from a survey of schools in the area that *a* Jimmy Bean had gone to a school at

Van Buren and Keeler and had listed 4211 West Gladys as his address. We believe that on the basis of all of this information, Lahm had probable cause to arrest *the* Jimmy Bean living at 4211 West Gladys.

■■ Defendants claim that the information provided by Birmingham was not a sufficient basis for a finding of probable cause in this instance. They argue that the information provided by Birmingham was not reasonably trustworthy because it was obtained by telephone and there was no proof that Lahm was actually speaking to Birmingham and because there was no proof that Birmingham was not a professional informant or proof of her reliability. We reject this claim. Although Officer Lahm did not check a telephone directory to make certain that the number which he called was actually listed to Birmingham, we do not believe that his failure to do so detracts from the sufficiency of the information obtained for probable cause purposes. As we have already noted, the question of probable cause involves probabilities. Information received over the telephone has in the past been found sufficiently reliable to form some of the basis for a finding of probable cause. (*People v. Lucus* (1968), 41 Ill. 2d 370, 243 N.E.2d 228.) In the instant case, the information received over the telephone came from a person who had witnessed the flight from the scene of the armed robbery. This person clearly identified herself to the police, giving her name, address, and telephone number. She told Lahm that she had gone to school with one of the men fleeing the scene and she knew that he lived in the vicinity of Keeler and Gladys. She said that the man was Jimmy Bean. Afterwards, Lahm corroborated some of this information by checking the police alpha file and visiting schools in the area. This corroboration supported the reliability of the earlier acquired information. We conclude that the information provided by Birmingham, being strong and positive and being corroborated in certain respects, was more than sufficient basis for the finding of probable cause.

In answer to defendants' argument that there was no proof that Birmingham was not a professional informant, needing more corroboration, we simply note that there is nothing in the record to indicate that Birmingham was anything but an ordinary citizen. (*People v. Padilla* (1979), 70 Ill. App. 3d 406, 387 N.E.2d 985.) As an ordinary citizen, her prior reliability need not be established. *People v. Hoffman* (1970), 45 Ill. 2d 221, 258 N.E.2d 326.

The second part of the State's first contention is whether probable cause alone is sufficient to make an arrest in one's private dwelling place. The police in this case entered Bean's apartment and made the arrest without a warrant.

The law with respect to this question is in a state of uncertainty due to the fact that the United States Supreme Court has yet to directly answer this question. (See *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 159, 370

N.E.2d 1067, 1069-70, for a listing of Supreme Court cases specifically reserving this question.)[1] Several Federal courts of appeal, however, have indicated that warrantless arrests within one's private dwelling place may be unconstitutional absent exigent circumstances. (See *Wolgemuth*, 69 Ill. 2d 154, 159-60, 370 N.E.2d 1067, 1070, for a listing of the cases.) In Illinois, the supreme court has seemingly indicated that it will only require probable cause in cases involving arrests made in private dwellings. (See *e.g., People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280; *People v. Johnson* (1970), 45 Ill. 2d 283, 259 N.E.2d 57), but even in those cases exigent circumstances were arguably present. (See *People v. Abney* (1978), 58 Ill. App. 3d 54, 55-56, 373 N.E.2d 861, 862, *appeal allowed* (1978), 71 Ill. 2d 603, for a listing of the exigent circumstances present in the leading supreme court cases.) Illinois appellate court cases indicate a number of different approaches to the problem. Some cases have indicated that mere probable cause is required, although the factual context of the cases indicates that exigent circumstances also are arguably present. (See, *e.g., People v. Bailey* (1978), 60 Ill. App. 3d 1046, 377 N.E.2d 273; *People v. Addison* (1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025.) Some cases have indicated that the area is uncertain, and, although the factual contexts of these cases contain exigent circumstances, these cases have not stated that a warrantless arrest will only be justified when exigent circumstances are present. (See, *e.g., People v. Taylor* (1979), 68 Ill. App. 3d 776, 386 N.E.2d 555; *People v. Denwiddie* (1977), 50 Ill. App. 3d 184, 365 N.E.2d 978.) Some cases have recognized the uncertainty but have required more than mere probable cause. (See, *e.g., People v. Trull* (1978), 64 Ill. App. 3d 385, 380 N.E.2d 1169; *People v. Abney* (1978), 58 Ill. App. 3d 54, 373 N.E.2d 861, *appeal allowed* (1978), 71 Ill. 2d 603.) Absent any clear guideline from the United States or Illinois Supreme Courts, we agree with the appellate court for the fourth district that "[t]he law must develop on a case by case basis." *Abney*, 58 Ill. App. 3d 54, 56, 373 N.E.2d 861, 862.

■■ In evaluating the arrest in this case, we think it helpful to utilize the factors which were originally suggested in *Dorman v. United States* (D. C. Cir. 1970), 435 F.2d 385, as factors to be considered in determining whether exigent circumstances existed. In so doing, however, we point out that we are not stating that exigent circumstances are a constitutional requirement. The factors suggested by *Dorman* include a consideration of (1) the quality of the information which formed the probable cause for the arrest; (2) the nature of the offense charged; (3) the danger that the suspect might be armed; (4) the strength of the belief that the suspect is in

[1] There are presently two cases before the Supreme Court involving this question. (*Payton v. New York*, Docket No. 78-5420, and *Riddick v. New York*, Docket No. 78-5421.) Although arguments were heard on March 26, 1979, the court has ordered the cases to be reargued, perhaps in the next term.

the premises being entered; (5) the nature of the entry into the building; (6) the time of entry; and (7) the likelihood that the suspect will escape.

The quality of the information which formed the probable cause for Bean's arrest was very high. Lucinda Birmingham, a clearly identified citizen and a former classmate of Bean, recognized him running from the cleaners with two men who had come from the cleaners, only moments after the armed robbery had occurred. Although she did not know exactly where Bean lived, she was able to tell Officer Lahm that he lived in the vicinity of Keeler and Gladys. Subsequent investigation by Officer Lahm revealed that *a* Jimmy Bean who had gone to school in the area was listed as residing at 4211 West Gladys, which could not have been more than six houses from the corner of Gladys and Keeler.

The offense charged was a violent crime. Defendants were all charged with armed robbery. There was testimony at one of the hearings that the two individuals who actually went into the cleaners carried a sawed-off shotgun and a pistol. Although the danger that Bean was armed might appear to be slight in light of Lahm's testimony that he did not draw his gun in the apartment because he did not know if Bean would be armed, the guns had not been accounted for at that time. Also, Lahm never indicated whether his partner had drawn his gun and, in fact, Mrs. Bean had testified that one of the officers did draw his gun in the apartment. Although there is no testimony that the police officers had checked with neighbors to see if Bean was still living at 4211 West Gladys, we think that there was sufficient reason to believe that he was in fact living there. Lahm had acquired information that *a* Jimmy Bean had been listed as living at 4211 West Gladys and that he was either 17 or 18 years of age. We particularly think that the information that Bean was 17 or 18 suggests that he would still be living at home. Also, we believe that the early hour of entry by the police gives them reason to believe that Bean would be home. (*People v. Trull* (1978), 64 Ill. App. 3d 385, 380 N.E.2d 1169.) Moreover, we observe that Mrs. Bean told the police that he was there after she had allowed them into either her apartment or the vestibule of her apartment.

■■ The police officers entered the apartment only after they knocked, announced their presence, and were invited in by Mrs. Bean. An invitation into a private dwelling, of course, eliminates any problem with the legality of the entry. (*People v. Johnson* (1979), 71 Ill. App. 3d 143, 388 N.E.2d 1320.) Although it is true that there is a dispute as to the extent of the invitation, this case does not present facts which indicate the type of entry which has been criticized elsewhere. (*Abney.*) Also, the time of entry was 8 a.m. Although an argument can be made that an 8 a.m. entry is as reprehensible as a nighttime entry, a number of cases would seem to indicate that there is a significant difference between entry during the

daytime hours and entry at night. Compare *People v. Addison* (1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025, and *People v. Denwiddie* (1977), 50 Ill. App. 3d 184, 365 N.E.2d 978, to *Abney* and *Dorman*.

■■ The last factor to be considered is the likelihood that Bean would flee. There is no evidence indicating that Bean ever resisted his arrest or attempted to flee. In fact, if he had attempted to flee, he probably would have been unsuccessful since there were police officers stationed in the rear of the apartment. Nonetheless, even conceding that there was no likelihood of Bean fleeing, we believe that on balance the *Dorman* factors would be satisfied in this case. *Denwiddie.*

■■ Defendants argue that a warrant should have been obtained because the police had time to obtain an arrest warrant. In *People v. Johnson* (1970), 45 Ill. 2d 283, 259 N.E.2d 57, an investigation had begun to focus on defendant at least one month before his arrest. Nevertheless, the police did not have a warrant when they arrested him in his apartment. Despite the absence of a warrant, the court found the arrest to be legal. In the instant case, Lahm obtained information from Birmingham on March 6. Although he conducted some investigation after that date, it is conceivable that he could have obtained a warrant before March 13. Yet, in light of the circumstances of this case, we do not believe the absence of a warrant here affects the validity of the arrest. See generally *People v. Helms* (1978), 67 Ill. App. 3d 729, 385 N.E.2d 127.

We reverse and remand the judgment of the trial court regarding the legality of Bean's arrest and statements and instruct the trial court to conduct a hearing on the voluntariness of Bean's statements and then proceed with the course of the trial.

## II

The State's second contention is that the trial court's ruling on the Byrds' motion to quash their arrests and suppress their identifications should be reversed since it was based on an erroneous ruling that Bean's arrest was illegal. It is clear that the court's ruling on the Byrds' motion was predicated on the ruling in the Bean case. Since we reverse the trial court's ruling in the Bean case, we also must reverse the court's ruling in the Byrd case. We are aware, however, that our decision to reverse the Byrd case does not resolve the question of whether the Byrds' arrests were legal. They claim that their arrests were illegal because they were made in their home without a warrant. The stipulation of the parties did not indicate that the Byrds were arrested in their home. It indicated only that the Byrds were arrested at 4132 West Van Buren. The parties' stipulation also did not mention any of the circumstances surrounding the arrest. Absent some record of the circumstances, we cannot say whether the arrests were legal.

Therefore, pending the outcome of the trial court's proceedings on the question of the voluntariness of Bean's statements, we instruct the trial court to conduct a hearing on the circumstances of the Byrds' arrests.

Reversed and remanded.

LORENZ and MEJDA, JJ., concur.