DANIEL S. PEARSON, Judge.
Dunlap’s trouble began one morning in June 1979 when the police received a tip that a light aircraft would be landing that afternoon with a load of marijuana in a remote area on the edge of the Everglades in the south end of Dade County. The police set up a surveillance using two helicopters and two police cars. Positioned at a distance from the scene of the proposed drop, the police observed an old green Pontiac (Dunlap’s) and a Dodge pick-up truck driving aimlessly on a road descriptively called “The Road to Nowhere.” The Pontiac and truck met at the south end of this north-south road, turned to face north and parked next to each other. Ten minutes later, a light aircraft flew into the area, circled once and landed on the road. As soon as the plane passed over the area, the Pontiac and truck headed in the direction of its landing point. The Pontiac pulled up under the right rear of the aircraft.
Moments later, the as-yet unidentified occupant of the Pontiac was seen bending over duffel bags near the aircraft. With the approach of the police helicopter, the airplane, truck and Pontiac hurriedly left the scene. Five duffel bags were left on the side of the road where they were recovered by one group of police officers. The bags contained marijuana. Attached to one bag was a key ring with a couple of keys.[1]
Meanwhile, another group of police officers had stopped the Pontiac driven by, it was then learned, Dunlap. Dunlap was placed under arrest, and the interior of his car was searched, revealing a small tin of marijuana in the glove compartment. The officers who located the duffel bags of marijuana and the keys arrived. They inserted one of the keys found with the duffel bag in the trunk lock. The key opened the Pontiac’s trunk.
Dunlap was charged with possession of marijuana. In an omnibus motion to suppress, he sought to exclude (a) the bags of marijuana, (b) the tin of marijuana, (c) the keys attached to a duffel bag, (d) evidence that the keys found with the marijuana fit the trunk lock of the Pontiac, (e) the Pontiac, and (f) his confession. From an order granting Dunlap’s motion in its entirety, the State took this appeal. We need address the exclusion of only items (a) through (d).[2]
Dunlap neither asserted, nor had, any expectation of privacy in the duffel bags or keys, and the seizure of them and the search of the bags did not implicate any right of Dunlap under the Fourth Amendment. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Moreover, it is now settled that Dunlap has no alternative Fourth Amendment right by reason *1368 of the fact that he was charged with possession of the marijuana in the duffel bags. United States v. Salvucci, - U.S. -, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Norman v. State, 388 So.2d 613 (Fla.3d DCA 1980). We therefore reverse the trial court’s order suppressing the duffel bags, the marijuana found therein, and the keys.[3]
The propriety of that part of the trial court’s order suppressing evidence that the keys found attached to one of the duffel bags fit the trunk lock of the Pontiac presents a more difficult question and one which has not, until now, been decided by any Florida appellate court.
* Where police have a well-founded and articulable suspicion that the occupant of a vehicle is involved in criminal activity, they have a right to stop the vehicle to conduct a reasonable investigation of the suspected activity. Mock v. State, 385 So.2d 665 (Fla.2d DCA 1980); Taylor v. State, 384 So.2d 1310 (Fla.2d DCA 1980); Franklin v. State, 374 So.2d 1151 (Fla.3d DCA 1979); State v. Payton, 344 So.2d 648 (Fla.2d DCA 1977). Clearly, the stop of the Pontiac driven by Dunlap was justified.
Since it is equally clear that the key to the trunk of the Pontiac was not obtained in violation of any constitutional right of Dunlap, the only remaining question is whether placing a lawfully obtained key in the trunk lock of a lawfully stopped vehicle constitutes an unlawful search. We have no quarrel with the trial court’s conclusion that no probable cause existed to search the interior of the Pontiac or its trunk. That conclusion, however, as to the trunk, is inconsequential,[4] since the search of the trunk was fruitless. What is being suppressed is testimony that the key fit the trunk lock. In our view, such testimony is not the product of a search at all.
In People v. Carroll, 12 Ill.App.3d 869, 299 N.E.2d 134 (1st Dist. 1973), cert. denied, 417 U.S. 972, 94 S.Ct. 3180, 41 L.Ed.2d 1144 (1974), police officers investigating a robbery and attempted rape found a jacket which, according to the victim, the attacker had dropped. In the jacket pocket they found a set of keys. Approximately fifteen minutes after the attack, other officers arrested Carroll, who was being chased by civilians who had responded to the victim’s cries for help. The police learned that Carroll resided at 4438 South Wells Street.
Approximately a month later, while Carroll was still in custody, officers took the set of keys found in the jacket pocket and went to the defendant’s address. The door to defendant’s apartment was in a common hallway. One of the officers inserted the key in the door; it turned the tumbler.
The court held that “no constitutional right, personal to the defendant, was violated when [the officer] merely inserted the key and learned that the tumbler could be turned by it.”
A like result was reached in People v. Trull, 64 Ill.App.3d 385, 20 Ill.Dec. 960, 380 N.E.2d 1169 (4th Dist. 1978). There, police officers received a report that an apartment was being burglarized. They proceeded to the address and discovered Trull on the balcony with a TV set. Trull identified himself, said that he lived there and had lost his keys. The police checked his story and found that he was, indeed, the resident of the apartment.
Later that evening, other officers responded to a reported burglary. At the scene, the officers found a key ring attached to a medallion which had the word “Pisces” inscribed upon it. An officer who had spoken to Trull earlier recalled that *1369 “Pisces” was the astrological sign fitting the birthdate Trull had given.
The police went to Trull’s apartment with the Pisces keys. They discovered the common entries locked. They tried a key on the Pisces ring and opened the lock. They proceeded to the defendant’s. apartment, and another key fit the apartment door.
The court held that testimony that the key fit the common entry lock was not subject to suppression, because no search took place when the key was inserted into that lock.[5]
In the present case, the key was lawfully obtained, the vehicle was lawfully stopped, and the police had a right to be where they were, and a right to carry out a legitimate investigative function. In our view, to hold that a lock is inviolable under the Fourth Amendment would be apotheosize a mere symbol of privacy. It is not a lock, a door, or a gate, but rather what lies behind or within, which is the concern of our Constitution. See United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (the expectation of privacy is that the contents, rather than the footlocker, remain free from public examination). We hold, therefore, that no search occurred when the key was inserted into the trunk lock of Dunlap’s vehicle. See also Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (in which four members of the court, although finding probable cause existed for a search of the vehicle, stated in dictum that the removal of paint scrapings and tread markings from the exterior of a vehicle is not a search that implicates traditional considerations of the owner’s privacy interests). But see United States v. Portillo-Reyes, 529 F.2d 844 (9th Cir. 1976) (holding over a dissent which would follow People v. Carroll, supra, that the “insertion of the key in the door of the [car], to see if it fit, constituted the beginning of a search.”). The officers are free to testify that the key which they found with the duffel bags fit the lock of the Pontiac trunk.
In sum, we reverse the trial court’s suppression of the five duffel bags of marijuana, the keys found attached to one of the bags, and evidence that one of these keys was inserted into and opened the trunk lock of the Pontiac. In all other respects, the order appealed from is affirmed.
Reversed in part; affirmed in part.

. It appears that the clasp on this duffel bag had broken and the key ring was used as a makeshift clasp.

. The exclusion of the Pontiac is, needless to say, bewildering. We assume that the trial court meant that the Pontiac was unlawfully impounded, see Section 30.384, Code of Metropolitan Dade County, Florida (1979), and that no search of it could be justified on an inventory theory. With that we agree. We make clear, however, that the illegal impoundment of the vehicle does not affect the lawfulness of the stop of the vehicle, nor serve to exclude testimony concerning the activities of the vehicle, or testimony that, pursuant to the stop, the key was inserted in the trunk lock of the Pontiac. We note also that the State does not contest the exclusion of Dunlap’s confession.

. The trial court’s stated reason for suppressing this evidence was a finding that there were “no facts shown sufficient to link” these items to Dunlap. That finding may constitute a reason to acquit Dunlap on an ultimate trial of this case, but it is not a reason to suppress the evidence. Moreover, that premature finding does not affect our conclusion that there were ample facts shown to create a well-founded and articulable suspicion that the occupant of the Pontiac was engaged in criminal activity so as to justify the stop of the vehicle.

. The conclusion of no probable cause to search the vehicle is, however, consequential as to the container of marijuana found in the glove compartment, the suppression of which we affirm.

. The court went on to hold that the subsequent entry into the common area was an invasion of a protected area and that evidence gathered as a result of that entry must be suppressed. The opinion does not state what evidence was to be suppressed. Presumably, testimony that the key fit the door to the apartment, learned after entry into the common hallway, was suppressible. The separate holdings in Trull point up that it is the entry, not the use of the key, which is the sine qua non of a search.