No. 1-00-1211
 First Division

June 28, 2002

THE PEOPLE OF THE STATE OF ILLINOIS, )   Appeal from the

)   Circuit Court of

Plaintiff-Appellee, )   Cook County

)

)    96 CR 21031

)

LUKAS LYLES, )   The Honorable

)   Edward M. Fiala, Jr.,

Defendant-Appellant. )   Judge Presiding.

PRESIDING JUSTICE COHEN delivered the opinion of the court:

Following a jury trial, defendant Lukas Lyles was found guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 1996)) and sentenced to 45 years in prison.  On appeal, defendant contends that the weapons recovered from the back porch of his apartment should have been suppressed as the fruit of an unjustified warrantless search of defendant's back porch.  For the following reasons, we affirm.

BACKGROUND

Defendant's conviction arose from the fatal shooting of Paris Green.  Defendant and codefendants Doyle Hargrays and Darryl James were charged with first degree murder (720 ILCS 5/9–1(a)(1) (West 1996)).  The cases were severed but tried simultaneously.  The evidence at trial established that shortly before midnight on July 16, 1996, Green was standing near the intersection of 46th Street and Indiana Avenue in Chicago speaking to Emil Riley, who was sitting in the driver's seat of a car.  Riley testified that, while they were speaking, a car drove by and the occupants of the car flashed gang signs.  Shortly thereafter, Hargrays arrived in another vehicle.  Hargrays and two other individuals exited the car and began shooting.  Riley, who suffered no injuries in the shooting, identified defendant as one of the shooters.  Green suffered multiple gunshot wounds and died as a result of a gunshot wound to the head. 

Officer Nathaniel Hill, a gang tactical officer, testified that he was aware of an ongoing gang dispute in the area where Green was shot.  Officer Hill arrived at the scene within 12 minutes after the shooting and observed approximately 20 to 25 people in the general area.  Officer Hill walked through the crowd and asked if anyone had witnessed the shooting.  Officer Hill spoke to Emil Riley and Ron Pendleton, who identified defendant as one of the offenders.  According to Riley, three individuals were involved in the shooting.  Riley told Officer Hill that the three individuals circled the block several times in a "white maroon [
sic
] vehicle," displayed gang signs and finally exited the vehicle and started shooting.  Riley and Pendleton provided Officer Hill with a physical description of each of the three individuals.  Riley described defendant as a male teen, approximately 5 feet tall.  Pendleton told Officer Hill defendant was wearing a white T-shirt.  

When Officer Hill spoke to Riley and Pendleton, he did not know that they and defendant belonged to rival gangs.  Two weeks prior to Green's shooting, a member of Pendleton and Riley's gang shot defendant and at the same time killed a member of defendant's gang.  According to Officer Hill, defendant was cooperating with the police investigation of that shooting, and Officer Hill knew where defendant lived.
  Officer Hill proceeded to defendant's apartment at 420 East 46th Street, approximately four to five blocks away.

Officer Hill and seven other officers sealed off the perimeter surrounding defendant's building.  While Officer Hill was stationed in the alley behind the building, officers at the front of the residence told him they were knocking on defendant's front door.  Officer Hill observed activity on the back porch but could not tell what was happening because it was dark.  The officers at the rear of the building subsequently told Officer Hill that three subjects were coming down the back stairs.  After defendant and codefendants were arrested in the backyard, the officers went up to the back porch of defendant's apartment and recovered two guns from a garbage can.  According to Officer Hill, other apartments had access or back doors that opened onto the porch. Officer Hill testified that there appeared to be two apartments "on [
sic
] the top floor back porch."  Officer Hill testified that he did not know whether defendant's apartment was searched.

Officer John Lahori, a gang tactical officer, testified that on July 17, 1996, at approximately 12:40 a.m., he was participating in the investigation of Green's shooting.  As part of this investigation, Officer Lahori hid at ground level under the first-floor back porch at defendant's apartment building along with another gang tactical officer, Officer Milton Seaton.  Officer Lahori was notified that additional officers entered defendant's apartment after knocking at the front door
.  Officer Lahori then heard some "footsteps on the porch area, some rumbling around."  Officer Lahori left his position under the porch and waited with Officer Seaton outside the ground-level stairway door.  Officer Lahori heard a total of two doors open.  According to Officer Lahori, defendant and the two other men
 were arrested after
 they
 exited the stairwell into the yard
.  Officer Lahori then ascended the stairwell to the second-floor porch area.

Officer Lahori testified that he saw "a table [and] a bunch of stuff on the back porch *** [and] kind of looked around on the back porch that was directly by the back door of [defendant's] apartment."  Officer Lahori recovered "[t]wo 9-millimeter handguns, a couple of 30-round clips and a lot of ammunition" from a garbage can that was "approximately three feet away from the rear entrance to [defendant's] apartment on the back porch."  Officer Lahori placed the weapons in a clear plastic bag so that he would not contaminate any fingerprints that might have been on the weapons.

At trial, the State introduced a photograph of the back of defendant's apartment building into evidence. 
 Officer Lahori testified that the photograph accurately reflects how the rear of defendant's apartment building appeared in July 1996, except that "[i]t seems to be a little more remodeling done."  Officer Lahori did not indicate what remodeling appeared to have been done.  The photograph depicts a brick three-story walk-up.
   On the second and third floors, a door led from the building to a wooden exterior porch that is protected on each exposed side by a wooden balustrade.  No door from the first-floor residence to the first-floor back porch is visible in the photograph.  An enclosed structure, apparently housing the stairwell, is visible directly adjacent to the porches.  No access to this structure–either from the building or the ground floor exterior–is visible in the photograph. A chain-link fence borders the property on both sides of the building and at the alley.  The photograph does not reveal whether any door or other barrier separated each porch from the enclosed stairwell.

Officer Seaton testified that he had known defendant for years and that he was aware that defendant had been shot prior to July 16, 1996.  On July 16, 1996, Officer Seaton went to defendant's residence at approximately 1 a.m.  While other officers secured the perimeter of the building, Officer Seaton hid along with Officer Lahori under the back porch.  Defendant, James, and Hargrave subsequently went down the back stairs and were arrested after they exited the back stairway through the ground-level door.  Officer Seaton "vaguely recall[ed]" attempting to open the ground-level door to access the back stairs and believed it was locked.  Officer Lahori testified that defendant and his companions unlocked the door when they exited the stairwell.  Two guns were subsequently found inside a garbage can on the upstairs porch.  Officer Seaton believed that defendant's apartment was in a three-story building and "guess[ed]" that three flights of stairs led to the porch where the guns were retrieved.  Officer Seaton did not recall whether other apartments had back doors that entered onto the porch.

Chicago police officer Ronnie Edmond testified that he and Officer Hill arrived at the scene of the shooting at approximately 12:15 a.m.  Thirty minutes later, Officer Edmond went with other officers to defendant's residence.  After the three individuals were arrested, Edmond and several other officers searched defendant's apartment.  Officer Edmond "believe[d] [he] searched the bedroom, the dining area and also *** around on the rear porch."  He was on the porch with Officer Lahori when the weapons were recovered, but he could not recall if they were in a garbage can.

At trial, Robert Berk, an analyst with the State Police crime lab, testified that he analyzed a gunshot residue kit which included swabs taken from both of defendant's hands on the night of the shooting.  Based upon his analysis, Berk opined that on the night of the shooting defendant had either handled a discharged weapon, fired a weapon or was in close proximity to a discharged weapon.

The parties stipulated that James Vantilburg, an expert in the field of firearms identification with the Chicago police department, received and examined items that were recovered from defendant's back porch and would testify that the chain of custody was complete and proper.  Vantilburg received one Taurus 9-millimeter semiautomatic weapon, one Glock 9-millimeter semiautomatic weapon, a clip for a 9-millimeter semiautomatic weapon, 55 bullets of 9-millimeter
 caliber, six .38-caliber bullets, and nine fired 9-millimeter casings.  Vantilburg would testify that five of the nine casings that were recovered from the crime scene were fired from the 9-millimeter Glock that was recovered from defendant's porch to the exclusion of every other gun in the world..

Prior to trial, defendant filed a motion to quash his arrest and suppress evidence.  Defendant did not argue in this motion that the warrantless search of the back porch of his apartment was improper.  Instead, defendant argued that the police lacked probable cause to arrest him and the evidence recovered was the fruit of the illegal arrest.  Following the hearing, the trial court denied defendant's motion.  The trial court found that the officers had a right to detain defendant and that Officer Lahori had "the right to then go up the stairs for the purpose of either preserving the evidence or protecting evidence *** he, in fact, found the weapons *** in fact, plain view."

On May 17, 1999
, defendant was found guilty of first degree murder.  On June 4, 1999
, defendant filed a motion for a new trial, which was denied by the trial court.  Defendant's posttrial motion did not challenge the legality of the warrantless search of the back porch of his apartment.  Following a sentencing hearing on August 3, 1999, defendant was sentenced to 45 years in prison.  The trial court allowed defendant to file his appeal 
nunc
 
pro
 
tunc
 on March 30, 2000, because the office of the State Appellate Defender was never notified of its appointment.

ANALYSIS

On appeal, defendant contends that the police improperly searched the rear porch of his apartment without a warrant and asserts that the weapons recovered from the porch should have been suppressed.  Generally, an issue not raised during trial and renewed in a timely posttrial motion is waived for purposes of appeal.  
People v. Enoch
, 122 Ill. 2d 176, 186-88 (1988).   Defendant concedes that because he did not challenge the legality of the warrantless search of his back porch either at trial or in his posttrial motion he has waived review of this issue.  Defendant asks that we nonetheless review the alleged error as plain error under Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)).  In the alternative, defendant argues that his trial counsel was constitutionally ineffective for failing to challenge the warrantless search.  The State argues that defendant did not have a protectable privacy interest in his back porch and defendant therefore cannot establish either plain error or ineffectiveness of counsel.

To prevail on a claim of ineffective assistance of counsel, the defendant must establish that
: (1) counsel's performance was deficient because counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) counsel's performance in fact prejudiced the defense.  
 
 
Strickland v. Washington
, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).  See also 
People v. Albanese
, 104 Ill. 2d 504, 526 (1984)
 (adopting 
Strickland
)
.  A court of review need not address both prongs of the 
Strickland
 test where the defendant's claim is defeated on one prong.   
People v. Williams
, 215 Ill. App. 3d 800, 811 (1991), citing 
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; see also 
People v. Jones
, 323 Ill. App. 3d 451, 459 (2001).

In 
People v. Hunley
, 313 Ill. App. 3d 16, 23-24 (2000), this court held that a defendant had no reasonable expectation of privacy in the back porch of a multi-unit dwelling where: (1) the porch was not closed off by any doors, screens or gates; and (2) no evidence was presented that the police deliberately avoided the locked front gates to enter the unlocked back yard.  
Hunley
, 313 Ill. App. 3d at 23-24.  In 
People v. Smith
, 152 Ill. 2d 229 (1992), our supreme court held that a defendant did not possess a reasonable expectation of privacy in an unlocked residential common area that was shared by other tenants.  
Smith
, 152 Ill. 2d at 243, 245-46.  Although the courts in 
Hunley
 and 
Smith
 both suggest in 
dicta
 that a tenant might have a reasonable expectation of privacy in a locked common area (
Smith
, 152 
Ill. 2d
 at 246; 
Hunley
, 313 
 Ill. App. 3d
 at 23), both this court and our supreme court have yet to directly rule on this issue.

The Fourth District of our appellate court has noted that "federal cases have indicated that the common areas of a locked apartment building are protected under the fourth amendment."  
People v. Trull
, 64  Ill. App. 3d 385, 389 (1978), citing, 
inter
 
alia
,
 
United States v. Case
, 435 F.2d 766 (7th Cir. 1970)
.  Relying on this federal precedent, the Fourth District concluded that "the common areas of a locked apartment building are protected under the fourth amendment."  
Trull
, 64  Ill. App. 3d at 389.

More recently, however, the Seventh Circuit Court of Appeals in 
United States v. Concepcion
, 942 F.2d  1170 (7th Cir. 1991), held that a tenant had no reasonable expectation of privacy in the common areas of a locked apartment building and, to the extent 
Case
 held otherwise, 
Case
 has not "survived changes in the Supreme Court's definition of protected privacy interests.
"   
Concepcion
, 942 F.2d  at 1172.   Indeed, the Second, Eighth and Ninth Circuits of the federal court of appeals have likewise held that tenants do not have a reasonable expectation of privacy in the common areas of their apartment building, even if the door to the apartment building itself is locked.  See
  
United States v. Barrios-Moriera
, 872 F. 2d  12, 14-15 (2d Cir. 1989), 
overruled on other grounds by 
 
Horton v. California
, 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990); 
United States v. Eisler
, 567 F. 2d  814, 816 (8th Cir. 1977); 
United States v. Nohara
, 3 F.3d 1239, 1242 (9th Cir. 1993).
  See also 
United States v. Miravalles
, 280 F.3d 1328, 1329, 1333 (11th Cir. 2002) (no reasonable expectation of privacy where the lock on the front door of the apartment building was not working on the day the police entered the building).  Following this more recent authority, we hold that a tenant has no reasonable expectation of privacy in common areas of an apartment building that are accessible to other tenants and their invitees.

Here, the record demonstrates that the staircase in question not only led to defendant's porch but also provided other tenants access to their porches.  The staircase was thus a common area in which defendant had no reasonable expectation of privacy.  Further, there is no evidence that any door or other barrier separated defendant's porch from the common staircase.  Accordingly, we conclude that defendant had no reasonable expectation of privacy in his back porch.  See 
Hunley
, 313  Ill. App. 3d at 23-24.

Because the search of defendant's back porch did not implicate defendant's fourth amendment rights, defendant was not prejudiced by his trial counsel's failure to challenge the warrantless search of his back porch.  We will not find that a defendant was deprived of effective counsel unless defendant has established sufficient prejudice resulting from counsel's alleged errors.  
Albanese
, 104 Ill. 2d at 527.  Further, because defendant's fourth amendment rights were not violated, admission of the weapons into evidence was not error.  Because there was no error, defendant's assertion of plain error clearly fails.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.  Pursuant to 
People v. Rogers
, 286 
 Ill. App. 3d
 825, 832 (1997),we grant the State's request for $100 in costs for defending this appeal
.

Affirmed.

TULLY and COUSINS, JJ., concur