THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JOSE C. LARA, Defendant-Appellee.

Fourth District   No. 13513

Opinion filed December 2, 1976.

John G. Satter, Jr., State's Attorney, of Pontiac (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Fellheimer, Fellheimer & Fitzpatrick, of Pontiac (Robert B. O'Dell, of counsel), for appellee.

Mr. JUSTICE REARDON delivered the opinion of the court:

The issue in this case concerns the right of the State to appeal from an order suppressing evidence in a criminal case. On May 4, 1975, defendant Jose C. Lara was involved in a highway accident in Pontiac, Illinois.

Thereafter he was issued a traffic citation for driving under the influence of intoxicating liquor in violation of section 11—501(a) of the Illinois Vehicle Code. The pertinent part of section 11—501(a) provides:

"No person who is under the influence of intoxicating liquor may drive or be in actual physical control of any vehicle within this State." (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(a).)

Defendant was escorted to the Pontiac police station where he was administered two breath tests.

Section 11—501.1(a), the "implied consent" provision of the Vehicle Code, provides that any person who drives a motor vehicle in this State, thereby consents to analysis of his breath or blood following a lawful arrest for an offense defined in section 11—501. A police officer must request within a reasonable time following arrest that the subject submit to the test. The test must be administered with an instrument approved by the Department of Public Health in consultation with the Department of Law Enforcement. The test must be administered twice, no less than 15 minutes apart, with the results being printed on a permanent record reflecting the date and time of the test. In addition, the subject must be given an oral statement and a statement printed in English and Spanish which advises him of the following: that by driving in this State, he has consented to the aforementioned analysis; that he may refuse to submit to analysis within 90 minutes of the request, but that such refusal will result in an automatic suspension of his driver's license for 3 or 6 months; that he may consult an attorney; that a refusal to submit to analysis or the results of analysis, if allowed, can be admitted into evidence; that he has a right to a copy of the analysis results; that he will be presumed intoxicated if the results indicate the presence of a .10% or more by weight of alcohol in his blood; that he can have other tests performed at his own expense; and that he has a right to full disclosure of information relating to the results of his test. Ill. Rev. Stat. 1973, ch. 95½, par. 11—501.1(a).

The results of a breathalyzer test are admissible into evidence in the prosecution of a charge for driving under the influence of intoxicating liquor pursuant to section 11—501(c) which states in part:

"Upon the trial of any action or proceeding arising out of the acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his breath, blood, urine, saliva or other bodily substance is admissible, as provided hereinafter in this paragraph (c) * * *." (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(c).)

Paragraph (c) goes on to require the consent of the defendant to the taking of a breathalyzer test before evidence of the results may be admitted at a criminal proceeding. The provision states:

"Evidence based upon a chemical analysis of blood, urine, breath or other bodily substance shall not be admitted unless such substance was procured and such analysis made with the consent of the person as provided by this Chapter, whose bodily substance was so analyzed." Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(c).

On May 6, 1975, defendant pleaded not guilty and demanded a jury trial. On August 20, 1975, defendant filed a pretrial motion to suppress the results of the breathalyzer test on the ground that the required section 11—501.1 admonitions were not meaningfully given.

At the suppression hearing, Alejandro Gutierrez, who accompanied defendant at all times pertinent to the accident and tests, testified that defendant did not understand English. Gutierrez served as an interpreter for defendant both at the scene of the accident and at the police station. At the station, Gutierrez was told by a police officer that defendant was to take two breath tests. Gutierrez was then handed the "Notice of Request to Submit to Test of Breath to Determine Intoxication" and was told to either read the Spanish side to defendant or to translate the English side as the officers read aloud the request form. Gutierrez could barely read Spanish, but could read English. The police never asked him about his translating ability or his ability to read Spanish. Gutierrez stated that defendant was not given a copy of the request form. While police read portions of the form, Gutierrez attempted to give defendant "an idea" of the meaning of each portion being read. Apparently, Gutierrez read paragraphs 1 and 3 in Spanish to defendant; he merely attempted to translate or convey the proper meaning of paragraphs 2 and 4 to 9 to defendant. Gutierrez admittedly was unable to "translate" certain words such as violation, analysis, determine, consult, privilege, revocation, submit, influence, establish, and presumption and felt he was hampered by a lack of time in his "translation" efforts. In fact, it appeared that Gutierrez in "translating" to defendant, misconceived the meaning of certain portions of the request form. The police never asked Gutierrez to ask defendant whether he understood what was being said to him.

Subsequently, the police told Gutierrez that defendant had to sign some papers. After Gutierrez told defendant he had to sign the request form, defendant signed, apparently without opportunity to read the form. Gutierrez testified that one breath test was administered to defendant before he signed the form, and the other after he had affixed his signature.

The defendant, through an interpreter, then testified that he could read and speak Spanish, but did not understand much English. Defendant stated that while at the police station he did not have a copy of the request form, nor could he see the copies possessed by the police and Gutierrez nor did he have an opportunity to read the form before signing it. Defendant said he did not quite understand Gutierrez' "translation" of the

contents of the form but did understand that he was to sign the paper and participate in a test. Defendant testified that at the time of signing the forms, he did not know of his right to refuse to take the test or the effect of a refusal, or the presumption established by a finding of .10 percent alcohol in the blood. Defendant testified further that after he arrived at his home later that day, his brother read him the request form and defendant then realized Gutierrez had not explained everything.

The State's evidence sharply conflicted with defendant's evidence. The arresting police officer, Michael Ores, testified that at the station he gave defendant a Spanish copy of the request form and gave Gutierrez an English copy. Ores stated he explained to Gutierrez that defendant had to understand all of the points on the request form. Whenever a question arose, the reading stopped and the problem was resolved between Gutierrez and Ores. Ores testified that Gutierrez did not seem to have problems reading and translating. Ores explained that defendant had to sign the request form in order to administer the test, yet, he did not specifically state to defendant that he did not have to take the test or sign the form. Since Ores does not speak Spanish, he was unaware of what was said to defendant by Gutierrez. Ores' testimony was materially supported by another police officer, Arthur L. Griggs, who was present at the station and who administered the breath tests.

The record includes a Spanish copy of the request form which has been signed by Officer Ores and defendant.

From this evidence, the trial court found that defendant "* * * did not at time of test and does not now speak, write or read English; that People and Defendant relied upon an interpreter whose capability and accuracy were unknown to the People; People did not ask Defendant if he read or understood Spanish; evidence in controversion whether People furnished Defendant copy of 'Notice of Request to take Breath Test' concurrently with the reading of the notice; that officer read the notice in English; that interpreter passed on to Defendant interpreter's understanding of the meaning in summarized form to Defendant, but did not translate verbatim the Notice; that interpreter did not read paragraph 2, 4, 5, 6, 7, 8, 9 or the consent language to the Defendant in Spanish nor in English and that Defendant's testimony was that he did not understand, prior to signing, that:

    1. He had the right to refuse to take the test.

    2. He had the right to read the notice and confer with an attorney or other person within 90 minutes of being furnished a copy of the notice before deciding whether to take the test.

    3. Any presumption was raised by any level, or not raised as a result of test results;

    4. That suspension might or might not occur depending on

whether he took or refused the test." (Order of 11th Circuit, Livingston County, filed August 21, 1975.)

This order, though somewhat vague, can only be understood to mean that the trial court sustained the defendant's motion to suppress the breath test evidence, and ruled that the defendant's signature was not a knowing consent and that the State had not complied with the section 11—501.1 requirements. It is from this order that the State appeals.

Historically the prosecution has not been permitted to appeal from an adverse ruling on a pretrial motion to suppress confessions or evidence. In 1961, section 747 of the Code of Criminal Procedure was amended to provide that "The People may sue out writs of error to review any order or judgment * * * suppressing evidence entered preliminary to trial." (Ill. Rev. Stat. 1961, ch. 38, par. 747.) Section 747 was repealed in 1964 and replaced by section 120—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, ch. 38, par. 120—1) and Supreme Court Rule 27(4) (Ill. Rev. Stat. 1965, ch. 110, par. 101.27(4)). Subsequently, there were further statutory amendments and rule changes culminating in Supreme Court Rule 604(a)(1), which presently provides:

> "(1) *When State May Appeal.* In criminal cases the State may appeal only from an order or judgment, the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or *suppressing evidence.*" (Emphasis added.) Ill. Rev. Stat. 1973, ch. 110A, par. 604(a)(1).

Abundant recourse has been had by the People to this appellate procedure. Confusion has arisen, however, as to when and under what circumstances an appeal may be taken from a suppression order. *People v. Shipp* (1968), 96 Ill. App. 2d 364, 239 N.E.2d 296, held that the trial court may suspend the proceeding and permit the State to seek review under Rule 604(a) when the effect of the trial court's ruling suppressing evidence is likely to block the prosecution entirely. It has also been held that the State may appeal from an order upholding a motion to suppress when the order has the effect of dismissing the charge or terminating a prosecution. (*People v. Koch* (1973), 15 Ill. App. 3d 386, 304 N.E.2d 482.) Rule 604 was interpreted by this court in *People v. Thady* (1971), 133 Ill. App. 2d 795, 270 N.E.2d 861. In that case, the trial court has sustained an objection to the admissibility of certain testimony relating to a breath analysis test given defendant. The State, appealing from an interlocutory order, argued that the ruling had the effect of an order suppressing evidence and was appealable under Rule 604. The *Thady* court, in elaborating on Rule 604, stated:

"Rule 604 provides for appeals by the State in certain situations, one of which is an order suppressing evidence. Superficially, this would seem to be such a situation.

However, any rule must find its birthright in a statute. Our Supreme Court was authorized by Section 129—1 of the Code of Criminal Procedure of 1963 to make rules for appeals by the State. It did make rules, including 604, and the statutory provisions of Section 120—1 were repealed by the 76th General Assembly by P.A. 76—1412.

The philosophy governing rule making power is found in the Civil Practice Act, Section 2, wherein the Supreme Court is granted power to makes rules 'supplementary to *but not inconsistent with*' the Act (Emphasis ours).

Applying this principle to the Criminal Code, we find only two provisions governing suppression of evidence; *viz.*, ch. 38, par. 114—11 concerning confessions and ch. 38, par. 114—12 concerning evidence illegally seized. Admittedly, Rule 604 on its face speaks only of 'suppressing evidence' and does not mention these sections specifically, but as we pointed out above, a rule can have no broader scope than the statute which gave it birth.

It requires little imagination to discern what chaos would ensue if every order such as the one in question here were appealable. As a practical matter, every ruling sustaining an objection to evidence amounts to a suppression of that evidence. If every such ruling were appealable, trials might last longer than the lifetimes of the parties and appellate judges outnumber trial judges three to one.

Our research has not disclosed any appeal taken under Rule 604 other than those involving confessions or searches and seizures. *People ex rel. Douglas v. Barrett*, 370 Ill. 464, 19 N.E.2d 340 involved payment to a widow of a deceased legislator. At page 469 our Supreme Court said:

'While this established custom is not conclusive of the constitutionality of the enactments, nevertheless, in determining the validity of legislative action, the uniform, continued and contemporaneous construction given by the legislature over a long period of years and generally recognized by the public, is usually given great weight by the courts.'

(1) We find this doctrine persuasive in the case of Supreme Court Rules and hold that the long continued practical application of a rule is plain evidence of its meaning.

(2) The ruling here was patently evidentiary in nature and hence not appealable." 133 Ill. App. 2d 795, 796-97, 270 N.E.2d 861, 862-63.

This interpretation limited the operation of Supreme Court Rule 604 to appeals from sustained motions suppressing confessions where *Miranda* warnings were not given pursuant to section 114—11 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 114—11) and from sustained motions suppressing the fruits of illegal searches and seizures, pursuant to section 114—12 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 114—12) and excluded from its ambit those trial court rulings concerning only the admissibility of evidence. More recently, however, our supreme court allowed appeals from orders suppressing the results of blood tests to determine intoxication where it was alleged that the defendants had not properly consented to the tests. (*People v. Todd* (1975), 59 Ill. 2d 534, 322 N.E.2d 447.) While *Todd* involved the State's right to appeal from an order suppressing evidence, it did not concern the statutory presumption of intoxication involved in the instant case. Thus, *Todd* has only limited applicability here. We also note that the Supreme Court Rules pertaining to the appealability of orders suppressing evidence are today authorized by section 6 of article VI of our 1970 Constitution.

In *People v. Van De Rostyne* (1976), 63 Ill. 2d 364, 349 N.E.2d 16, our supreme court definitively delineated those situations in which an order suppressing evidence may be appealed by the State pursuant to Rule 604(a)(1). The court stated:

> "The motion to suppress evidence, which is the only part of Rule 604 that we are concerned with in this case, is a product of the exclusionary rule which prohibits the use of illegally obtained evidence.
>
> > 'The general rule is, that where it is claimed that evidence against one accused of crime has been obtained by means of unlawful search and seizure, the court will not stop in the midst of the trial and hear evidence in order to determine whether the manner of securing the evidence was legal or not but such question must be raised before the trial. [Citations.]'
>
> The motion to suppress is the generally accepted method by which the constitutionality of the means used to obtain evidence is raised in advance of trial. [Citations.]" (63 Ill. 2d 364, 367, 349 N.E.2d 16, 18.)

The *Van De Rostyne* court only noted sections 114—11 and 114—12 of the Code (Ill. Rev. Stat. 1973, ch. 38, pars. 114—11, 114—12) which specifically concern pretrial motions to suppress involuntary confessions and evidence obtained by unlawful search and seizure, respectively. Section 114—11 provides in pertinent part that:

> "(a) Prior to the trial of any criminal case a defendant may move

to suppress as evidence any confession given by him on the ground that it was not voluntary." (Ill. Rev. Stat. 1973, ch. 38, par. 114—11(a).)

Section 114—12 provides in pertinent part that:

"(a) A defendant aggrieved by an unlawful search and seizure may move the court for the return of property and to suppress as evidence anything so obtained on the ground that:

(1) The search and seizure without a warrant was illegal; or

(2) The search and seizure with a warrant was illegal because the warrant is insufficient on its face; the evidence seized is not that described in the warrant; there was not probable cause for the issuance of the warrant; or, the warrant was illegally executed." Ill. Rev. Stat. 1973, ch. 38, par. 114—12(a)(1), (2).

The *Van De Rostyne* court also stated that the various views concerning the appealability of orders suppressing evidence pursuant to Rule 604 are due to the incorporation in one sentence of several different kinds of orders from which the State may appeal.

Not every ruling, however, on the admissibility of evidence adverse to the State amounts to a suppression of evidence within the ambit of Rule 604(a)(1). (*Koch.*) For example, a rule denying the admissibility of blood tests results not given with the full knowledgeable consent of the defendant was not considered an appealable order under Rule 604(a)(1) because it was not a motion to suppress as permitted under sections 114—11 and 114—12. *People v. Wheatley* (1972), 5 Ill. App. 3d 827, 248 N.E.2d 353.

In the case at bar, the trial judge held that the defendant's consent to the breathalyzer test was not valid because the defendant had no basis of information or knowledge upon which to form a knowing consent and because the State had failed to fully comply with the requirements of section 11—501.1. Accordingly, the trial court determined that since the defendant did not fully understand the section 11—501.1 breath test admonitions given by the arresting officer, the test results were inadmissible because they lacked a proper foundation. In essence, therefore, the order based on defendant's motion to suppress was not only suppressing evidence but was a mislabeled evidentiary order which is not appealable.

In the *Van De Rostyne* case, an almost identical situation appeared. The defendant was arrested for driving while intoxicated, and at trial filed a motion to suppress the results of a breathalyzer test on the ground that the test was improperly administered. The supreme court determined that the motion was improperly labeled and should not have been sustained. Although also dealing with an order granting a mistrial, the court held that since the mislabeling of a motion should not profit the

party in error, the most appropriate remedy was to return the case to the circuit court with directions to vacate the order sustaining the motion to suppress and to proceed with trial. We agree with that remedy.

We hold, therefore, that the State's right to appeal from a motion suppressing evidence is limited to those specific instances where the evidence objected to has become tainted by its acquisition in such manner as to make the evidence subject to suppression under section 114—11 and 114—12. Whether the order has the effect of dismissing the charge or terminating the prosecution should not be the concern of the trial judge since the "* * * judge, in ruling upon a motion in advance of trial, is in no position to determine the impact of the suppression of a particular item of illegally obtained evidence upon the prosecution's case." *Van De Rostyne*, 63 Ill. 2d 364, 368, 349 N.E.2d 16, 19.

Accordingly, we find that the trial court's order was merely an evidentiary ruling and not an appealable order, and we dismiss the appeal.

Dismissed.

SIMKINS, P. J., and GREEN, J., concur.