(No. 52471

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. CHARLES A. ALFANO, Appellee.

*Opinion filed February 22, 1980.*

RYAN, J., took no part.
UNDERWOOD, J., specially concurring.

William J. Scott, Attorney General, of Springfield, and Dennis P. Ryan, State's Attorney, of Waukegan (Donald B. MacKay and Melbourne Noel, Assistant Attorneys General, of Chicago, and Mark P. Seidler and Raymond McKoski, Assistant State's Attorneys, of counsel), for the People.

Charles J. O'Laughlin, Michael J. Rovell, and Kathleen J. Purcell, of Jenner & Block, of Chicago, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

In this case, which is a sequel to *People ex rel. Illinois Judicial Inquiry Board v. Hartel* (1978), 72 Ill. 2d 225 (referred to herein as *Alfano I*), the State appealed to the appellate court from a judgment of the circuit court of Lake County purporting to acquit the defendant, Charles A. Alfano, an associate judge of the circuit court of Cook County, after a bench trial on charges that he had committed battery and obstructed a police officer in the performance of his duties, both of which offenses are misdemeanors under the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 12–3, 31–1). We granted a motion by the State for a direct appeal to this court under Rule 302(b). A motion by the Illinois Judicial Inquiry Board (the Board) for leave to file a brief *amicus curiae* was denied. In its order allowing a direct appeal this court directed the parties to address the question of appealability.

The judgment of the trial court followed rulings in which the court struck the testimony of the witnesses for the State. The defendant contends that the judgment is not appealable in view of article VI, section 6, of the 1970 Illinois Constitution, which provides: "[a]fter a trial on the merits in a criminal case, there shall be no appeal from

a judgment of acquittal." The determination of appealability depends in part upon how the judgment below is characterized, so that the question of appealability is closely intertwined with the consideration of the merits, and a somewhat detailed account of the proceedings thus becomes necessary in order to understand fully the issues which are before us.

The offenses with which the defendant was charged took place on September 5, 1977, while Richard M. Whitmore, a detective with the Lake County sheriff's office, was serving the defendant's son and another juvenile with traffic citations in response to a complaint from neighbors about their riding of motorcycles. Whitmore was sitting in his car at the time, and the defendant allegedly reached in and struck him on the arm. It was also charged that after the altercation with Whitmore the defendant tried unsuccessfully to persuade Whitmore not to arrest him. Whitmore swore out a complaint, and the defendant was arrested that same day.

The incident took place in a subdivision near the defendant's summer home in the vicinity of Antioch, and it attracted the attention of a number of nearby residents, some of whom witnessed it. Shortly after the defendant's arrest, independent investigations into the incident were begun by the sheriff's office, by counsel retained by the defendant, and by personnel from the Board.

On October 4 the trial court granted a motion by the defendant that the State be directed to furnish the names of persons whom it intended to call as witnesses at the trial. In response to this request the State furnished a list of 14 persons, which included Officer Whitmore, a second officer named James H. Donaldson, and Philip and Rosebud Sunich, private citizens who had been eyewitnesses. The State also furnished various police reports of the incident. No question is raised here as to this pretrial discovery.

On November 30 the defendant filed a motion request-

ing that the Board be required to produce its files relating to the incident, and he also served a *subpoena duces tecum* on the Board's chairman. On December 14 the court denied the Board's motion to quash the subpoena, and issued an order that the Board produce at the time of trial "[a]ll written statements, and oral statements reduced to writing which are verbatim or substantially verbatim made by any person named on the state's list of witnesses." The order also provided: "The statements of any witness who testifies at the trial shall be made available to the defense upon the conclusion of the witnesses' direct testimony for the use of the defendant for impeachment purposes, if any."

The order required the Board to produce for inspection by the court "all evidence obtained by the Board during the Board's investigation of the conduct of the defendant in its investigation of the incident leading to the criminal charge before the court." The order continued "the court shall examine the evidence [and] it shall, excluding any work products and excluding the disclosure of any informant whose identity is a prosecution secret, deliver to the defendant any evidence which tends to negate the defendant's guilt or which is of an exculpatory nature."

It was at this juncture that the Board instituted the proceedings in *Alfano I*, in which this court awarded a writ of *mandamus* directing the trial judge to expunge his order of December 14.

After this case had resumed in the trial court and the trial judge had expunged his order, the defendant served a new subpoena upon the Board. This second subpoena was drawn more narrowly than its predecessor. It called for materials which fell into three categories, the first of which was designed to comply with the "plurality opinion" in *Alfano I:*

> 1. All documents and memoranda which plainly negate the defendant's guilt.

2. All documents or memoranda which contain statements that are inconsistent with, or contrary to the statements given to the police or the State's Attorney's investigators which are attached to the subpoena as exhibit 1. (Exhibit 1 contained 48 pages of reports on interviews with witnesses.)

3. All documents or memoranda which contain statements that are inconsistent with, or contrary to statements given to the Board by 21 named individuals, including Officer Whitmore and Philip and Rosebud Sunich, each of whom was included in the amended list of intended witnesses which the State had given to the defendant. (A second officer, James H. Donaldson, had also been included in the State's list of intended witnesses, but his name did not appear in the subpoena.)

It will be noted that the subpoena did not in terms call for the production of statements made to the Board or to its investigators, although the subpoena is structured in such a way that some statements of that character would be called for.

On May 4, 1979, the Board filed a motion to quash the subpoena except as to documents which on their face plainly negated the defendant's guilt. In its motion the Board also represented that it had reviewed all the material in its possession called for by the subpoena, and had determined that none of it "on its face plainly negates the guilt of defendant" or "would undermine substantially the credibility of any of the persons referred to in the *subpoena duces tecum* on the basis of the statements of such persons contained in exhibit 1."

The trial judge entered an order quashing the subpoena except for documents which on their face plainly negated the defendant's guilt, and ordered the Board to produce all documents of the latter character. The State represents in its brief and the Board has admitted that it did produce for the defendant certain exculpatory statements which it had obtained from "defendant's own witnesses." None of the material was given to the State, and the defendant has not informed us of its contents.

The case came on for trial on August 6, 1979. The defendant waived a jury, and the State called as its first witness Officer Whitmore. No objection to his testimony was made by the defendant at the outset, but at the start of cross-examination Whitmore was asked whether he had been interrogated by an investigator for the Board. Whitmore answered in the affirmative. Asked if he "had a copy of his statement," the witness stated that he did not. The defendant's counsel then asked the State's Attorney for a copy of the statement, and the latter stated that he had no copies of any statements given to the Board. The defendant then moved that Whitmore's entire testimony be stricken, and the court granted the motion.

The remarks of the trial judge which appear in the report of proceedings show that the basis of his ruling lay in what he regarded as a dilemma created by the decision in *Alfano I* in that the Board was not required to produce any statements other than those which plainly negated the defendant's guilt, and that the Board itself was given the sole power to determine what statements would meet that test. Those limitations, in the view of the trial judge, conflicted with the defendant's right to effective cross-examination and thus with his right to due process, a view which has been repeatedly expressed by this court. See, e.g., *People v. Moses* (1957), 11 Ill.. 2d 84, 89; *People v. Johnson* (1964), 31 Ill. 2d 602; *People v. Cagle* (1969), 41 Ill. 2d 528, 531-35; *People v. Nichols* (1976), 63 Ill. 2d 443; cf. *People v. Tate* (1976), 63 Ill. 2d 105, 112; *People v. Szabo* (1977), 55 Ill.. App. 3d 866, 870-71. See also the committee comments to Rule 412(c) (73 Ill. 2d R. 412(c)).

With respect to statements which might be used to impeach a witness, the trial court was not aided by the representation which the Board had made in its motion to quash—that no statement made to the Board would undermine the testimony of persons who had already given inconsistent statements to the police.

The question, however, is whether any prior statements given to the Board by a witness were inconsistent with his trial testimony. That is a question which cannot be answered until the witness has actually testified.

In the course of the hearing on the Board's motion to quash the subpoena, counsel for the Board admitted that there could well be statements which contradicted a witness' testimony yet did not negate guilt. He gave as an example a witness who testified to having seen the defendant strike Officer Whitmore, but who had stated to the Board that since his view was blocked he could not see exactly what went on.

The views contained in the opinion of Mr. Justice Underwood, concurred in by Mr. Justice Ryan and Mr. Justice Kluczynski, were not wholly agreed to by the other three participating justices. In the concurring opinions it is suggested that evidence which tends to negate or to exculpate should also be produced, as well as evidence which would undermine the credibility of a witness' testimony. The concurring justices also suggested that in some case, at least, there should be an examination *in camera* of statements to the Board so that the latter's determination would not necessarily be final.

While all the justices concurred in the judgment of the court, that concurrence simply reflected an agreement that the order of the trial court was too broad and that, as a minimum requirement, all statements which plainly negated the defendant's guilt had to be produced. If cases should come before us in the future involving subpoenas having a different scope, *Alfano I* would not preclude us from reexamining the criteria which are to govern production.

The second witness called by the State was Philip M. Sunich. At the beginning of cross-examination Sunich was asked the same question put to Whitmore, and he stated that to his knowledge he had not been interrogated. The defendant's motion to strike his testimony was denied.

this point the trial was adjourned until the following day.

The next day counsel for the defendant advised the court that he had had a telephone conversation with the counsel for the Board, Milton I. Shadur, in which he had asked Shadur whether Philip Sunich, as well as Rosebud Sunich and James H. Donaldson, whom the State was also planning to put on the stand, had been interviewed by an investigator for the Board. Shadur told the defendant's counsel that that was the case. At the request of the defendant's counsel the prosecutor also called Shadur, who confirmed the information he had just given to the defendant's counsel. It is not clear from the record whether the Board's files contained verbatim transcripts of statements by the persons interviewed or rather notes prepared by the interviewer. The court then struck the testimony of Mr. Sunich.

The State's Attorney stipulated that if called as a witness Shadur would testify to the same effect as had just been represented to the court. The counsel for the defendant stated that he would make the same motion to strike the testimony if Donaldson or Ms. Sunich were called to the stand, and the judge stated that he would make the same ruling. The following colloquy then took place:

"MR. McKOSKI [the Assistant State's Attorney prosecuting the case] : Thank you Judge. I am clear on that now. In any event, the four witnesses' testimony or two that have been stricken, the State is in, to say the least, the hands are tied. We have not other witnesses to present. The witnesses that testified herein were stricken on or did' not testify but their testimony would have been stricken and therefore the State has nothing to present at this time.

MR. O'LAUGHLIN: Motion for acquittal.

THE COURT: I will find the defendant not guilty.

MR. McKOSKI: Thank you, Judge."

The following entry appears on the minute book:

"People in open Court by Mr. McKoski Assistant State's Attorney on behalf of Dennis P. Ryan State's Attorney—

Defendant present in open court and by Charles O'Laughlin—his attorney Trial continues—Motion to Strike testimony of Philip Sunich granted—State rests— Defendant's Motion for Directed Verdict granted— Defendant discharged—Surety on Bond released—Case closed."

As part of a motion by the defendant to supplement the record on appeal, which was taken with the case, the defendant's attorney seeks leave to file an affidavit which recited the conversation with Shadur referred to above. The affidavit also goes on to state that the affiant had been told earlier by an assistant State's Attorney that Whitmore had been interrogated by the Board, and that on the basis of information from one of his own investigators the affiant "surmised" that the Suniches had also been interrogated, but that he had had no knowledge prior to trial that Officer Donaldson had been interrogated, and that at no time prior to his conversation with Shadur was the affiant advised by any representative of the Board of the names of all persons who had given statements to it. This affidavit is supported by a companion affidavit executed by Shadur.

These affidavits concern factual matters, but the State has filed no objection to the motion, and it is therefore allowed.

We turn now to the question of appealability. As previously noted the defendant characterizes the judgment of the trial court as being precisely what it was stated to be, a finding of not guilty after a trial. The State, on the other hand, characterizes it as a judgment entered on a motion to suppress pursuant to section 114—12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—12), as to which an appeal may be taken by the State under Rule 604(a) (73 Ill. 2d R. 604(a)). There are several difficulties with this thesis.

To begin with, the defendant did not ask that the witnesses' testimony be denied admission. Furthermore, section 114—12(c) directs that a motion to suppress shall be

made before trial unless the movant was not then aware of the grounds on which it is based. Even if we accept as correct the recitals contained in the two affidavits tendered by the defendant, it seems clear that the defendant did have grounds to believe that at least three of the witnesses had given statements to the Board, and in view of Shadur's disclosure to him at his request that these witnesses' statements had been received, we cannot assume that Shadur would not have responded to a similar request made before trial. No such motion was made, however. Assuming *arguendo* that such a motion would still have been timely if made during the trial, none was then made. The court did not terminate the trial, as is contemplated by section 114–12(c), nor was it asked to do so by the State.

A further problem seems to be presented by the decision in *People v. Van De Rostyne* (1976), 63 Ill. 2d 364. In that case the court drew a distinction between the suppression of evidence and its exclusion, and stated that the former was appropriate only where it was claimed that the evidence in question had been obtained through unlawful means. (See 63 Ill. 2d 364, 367-68.) In the present case there was of course no claim that the testimony of the witnesses had been unlawfully obtained. The claim was rather that the failure to furnish the defendant with a copy of the witnesses' statements to the Board deprived the defendant of his right to conduct an effective cross-examination.

Moreover, whether or not the remedy of striking the testimony was the correct one under the circumstances, once such action had been taken and the State had advised the court that it had no further witnesses to present, it is not apparent what alternative was available to the trial court other than to enter a judgment of acquittal. Had the State pleaded surprise and requested a recess or short continuance in order to locate other witnesses who had not been interviewed by the Board, we would be confronted

by a different situation. The State did not do so, however; it was unable to suggest any other procedure which the court should follow; nor did it, either at the time judgment was entered or in a post-trial motion, raise any objection on this point.

The State urges in the alternative that the judgment of the circuit court fell within Rule 604(a)(1), which provides:

"In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; ***" 73 Ill. 2d R. 604(a)(1).

There can be no question but that the charge here did not fail to state an offense, and no claim is made that dismissal of the charge would be proper under any of the other grounds enumerated in section 114—1. It is, of course, true that the grounds enumerated in section 114—1 are not exclusive, and that there may be an appeal by the State from a dismissal on other grounds where the substantive effect of the judgment or order results in dismissing the charge. (*People v. Love* (1968), 39 Ill. 2d 436, 438-40 (right to a speedy trial); *People v. Lawson* (1977), 67 Ill. 2d 449, 454-57 (preindictment delay).) In other words dismissal of a charge may be appropriate for reasons which amount to a violation of due process other than some defect in the complaint or indictment. While the present case does involve due process considerations, however, the defect here does not relate to delay in bringing the charge or commencing the trial.

It may be that a motion might properly have been entertained if made before trial to dismiss the charges on the ground that a fair opportunity to challenge them would be unconstitutionally denied. Had such a motion been granted, an appeal by the State would not have violated the ban on double jeopardy, since proceedings prior to the trial do not entail jeopardy. (*People v. Shields*

(1979), 76 Ill. 2d 543, 547-48.) No such pretrial motion was made, however, and, as stated in *Shields,* once the first witness was sworn and the judge began to hear evidence, jeopardy attached. 76 Ill. 2d 543, 546-47.

We therefore conclude that the judgment of the trial court was not appealable in the unusual circumstances of this case.

*Appeal dismissed.*

MR. JUSTICE RYAN took no part in the consideration or decision of this case.

MR. JUSTICE UNDERWOOD, specially concurring:

In a curious inversion of what I would consider normal procedure, my colleagues first discuss the merits of the case and then decide the judgment appealed from was not appealable. I agree that, in the circumstances of this case, the "directed verdict" of not guilty is not appealable. I am, however, not at all certain that due process requires that the statements given the Board be produced for inspection once the witness testifies (see *People ex rel. Illinois Judicial Inquiry Board v. Hartel* (1978), 72 Ill. 2d 225), as I read the court's *dicta* to indicate. Because discussion of that question is unnecessary here, I would await its presentation before deciding it.