THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
WALTER MONTGOMERY, Defendant-Appellee.

First District (2nd Division) No. 78-1318

Opinion filed May 27, 1980.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Frederick F. Cohn, of Chicago, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Sometime between 5 and 6 a.m. on November 27, 1976, the defendant was arrested in his Chicago home by the Chicago police. Without a warrant of any type the defendant was arrested for an alleged rape which occurred on November 17, 1976. Certain articles were seized by the police at the time of the arrest. Thereafter defendant was indicted on four separate charges of rape which occurred during the months of

August through November of 1976. The trial court, as the result of pretrial motions in the first case to be tried, suppressed certain physical evidence.

The State appeals, contending the trial court erred (1) in suppressing items that were in plain view when seized by the police at the time of defendant's lawful arrest, and (2) in suppressing the defendant's palm print which was recovered from the scene of another rape from which a common design and modus operandi could be demonstrated.

In summary the evidence at the pretrial hearing indicated that on November 17, 1976, Elfreda Bronstein was raped on Chicago's north side. She immediately reported the incident to the police giving a description of her assailant. Two days later the victim tentatively identified a photograph of defendant as her assailant. The police on November 20, 1976, began surveillance of the area where the rape had occurred. Two women police officers acted as streetwalking decoys while other officers covered them. On November 20, between 1:20 and 4 a.m., the police observed the defendant following a decoy on three separate occasions. Because of persons or cars appearing each time, the defendant abandoned his pursuit. This surveillance continued each day through November 27, 1976.

On November 27, between 5 and 6 a.m., approximately eight policemen went to the defendant's apartment to arrest him, some officers going to the front door, others to the back door. The police did not have any warrant. The policemen at the front door knocked and announced their office. The record is unclear as to who opened the door. In any respect, when the door opened, defendant, who was standing there in a hallway, was immediately arrested. The hallway was described as being approximately 6' by 6' to 6' by 12'. At the end of the hallway was an adjoining living room. In the living room was a portable bar with a footrest. One of the policemen testified that this bar was located against a wall on the immediate left inside the entrance to the living room. On the footrest in plain view were gloves, a mask, and a strip of cloth, which items a police officer seized. This police officer testified that before he entered the apartment he had information that the assailant in a series of rapes which occurred in the same vicinity as the instant rape wore gloves, blindfolded his victims, and was masked. One of the officers walked to the rear of the apartment and opened the back door for the other officers waiting there.

After making specific findings of fact, the trial court denied defendant's motion to quash his arrest but granted defendant's motion to suppress the mask, gloves, and strip of cloth seized from his apartment. Based upon the totality of the circumstances known to the officers at the time of the arrest, the court found that the police had sufficient probable cause to arrest the defendant, and that his arrest in the hallway of his

apartment was therefore legal. The court stated that it would have been much better police procedure to have presented the facts to a magistrate and have requested an arrest and a search warrant, but that the failure to do so did not vitiate the arrest. However, the court suppressed the physical evidence seized from the defendant's apartment finding *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, controlling. *Chimel* limits a warrantless search incident to an arrest to the arrestee's person and area where the arrestee might gain possession of a weapon or destructible evidence. The court stated:

> "Walter Montgomery, when he opened the door to his apartment, was immediately placed under arrest in the hallway, at which point, he was some six to eight feet removed from the livingroom where the items which are cited to be suppressed were observed in plain view. However, the authority holds, plain view alone is not enough to justify the warrantless seizure of evidence."

Citing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, the trial court found that the police failed to demonstrate "any exigent circumstances which would permit evidence secured in the manner that this evidence was, to be [cleansed] of the Constitutional taint, which their seizure branded this evidence with."

The defendant also filed a pretrial motion seeking the exclusion of a palm print, identified as defendant's print, found on a piece of cardboard at the scene of a rape which occurred a couple of weeks before and in the same vicinity as the rape in question. It was brought out at the hearing that on November 2, 1976, 15 days before the instant rape, Judy Hoffman was raped in the same area at approximately the same time. Both Hoffman and the victim here told the police that they had been blindfolded, a knife was placed at their necks, and they were pulled into a gangway. In the instant rape, the assailant placed a coat underneath the victim. In the Hoffman rape, a piece of cardboard was placed underneath the victim from which the police were able to recover a palm print which an expert determined matched the palm print of the defendant. Because Hoffman was blindfolded, she could not see her assailant but estimated that he weighed about 150 lbs. The victim involved in the instant case said she was also blindfolded, but it loosened enabling her to see her assailant whom she described as a large, tall, black male. In the police report the assailant was described as about 6'5" tall and 245 lbs.

The trial court refused to allow the State to use the cardboard containing the defendant's palm print as evidence of common scheme, motive, and design finding the prejudice of using the print outweighed its probative value. The trial court relied on the facts that Hoffman never saw her assailant and described him as weighing only 150 lbs. which differed greatly from the defendant who was 6'5" and weighed 285 lbs.

The court stated that it would not prohibit the State from attempting to establish a common scheme and design but it had to do so without using evidence of the palm print.

I.

The State contends that the trial court's reliance on *Chimel v. California* in its decision to suppress the items seized from the defendant's apartment was misplaced. In *Chimel*, the Supreme Court defined the scope of a permissible warrantless search incident to a lawful arrest to include a search of the defendant's person plus the area within his immediate control from which he might obtain possession of a weapon or destructible evidence. It is the State's contention that no search was conducted, rather the items seized were in plain view and *Chimel* did not abolish the plain view exception to the search warrant requirement.

■■ A search implies a prying into hidden places for that which is concealed; it is not a search to observe that which is open to view. (*People v. Berg* (1977), 67 Ill. 2d 65, 68, 364 N.E.2d 880.) Under the plain-view exception to the warrant requirement, an arresting officer may seize evidence within a dwelling that inadvertently comes into plain view, even though outside the area under the immediate control of the arrestee. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 465-66 n.24, 29 L. Ed. 2d 564, 582-83 n.24, 91 S. Ct. 2022; *People v. Holt* (1974), 18 Ill. App. 3d 10, 12, 309 N.E.2d 376.) However, this seizure is proper only when three conditions are met: (1) the object seized is in plain view; (2) the officer views the object from a position where he has a right to be; and (3) the facts and circumstances known to the officer at the time he acts give rise to a reasonable belief that the object seized constitutes evidence of criminal activity. *People v. Holt*.

A.

It is the defendant's primary contention that the officers' nighttime, nonconsensual and warrantless entry into his home in order to arrest him absent exigent circumstances was a violation of his fourth amendment rights, and therefore the items seized as a result of that illegal entry and arrest were properly suppressed. If the officers' entry to effectuate the arrest was in fact illegal, then they could not have viewed the items from a place where they had a right to be and the plain view exception would not apply. Thus we must first address the question concerning the legality of the warrantless entry.

Pursuant to section 107—2(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c)), a peace officer may arrest a person when he has reasonable grounds to believe that person is committing or has committed an offense. The trial court's finding that

defendant's arrest was based upon probable cause has not been challenged by defendant on appeal. Relying on this, the State argues that in Illinois no arrest warrant is required in order to enter a suspect's home for purposes of arresting him pursuant to probable cause, citing *People v. Johnson* (1970), 45 Ill. 2d 283, 259 N.E.2d 57, *cert. denied* (1972), 407 U.S. 914, 32 L. Ed. 2d 689, 92 S. Ct. 2445; *People v. Bailey* (1978), 60 Ill. App. 3d 1046, 377 N.E.2d 273; and *People v. Ortiz* (1975), 35 Ill. App. 3d 283, 340 N.E.2d 714.

In *Johnson*, the defendant argued that a warrantless entry into one's home in order to effectuate an arrest was permissible only in hot pursuit or in an emergency when it was impractical to obtain a warrant. Our supreme court agreed that it was desirable for an arrest to be based upon a warrant when the circumstances permitted, but stated that an arrest may be lawful when based on probable cause, notwithstanding the absence of a warrant citing section 107—2(c) of the Code of Criminal Procedure of 1963. (45 Ill. 2d 283, 288.) In *Johnson*, prior to arriving at the apartment which had earlier been identified as the defendant's, the arresting officers already had reasonable grounds to believe defendant committed a crime, and when defendant opened the door, the officers were able to verify his description as well as his presence in the apartment. Since the basis for a valid arrest existed prior to the entry, the court found the entry justified under section 107—5(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1967, ch. 38, par. 107—5(d)). That section provided and presently provides: "All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to make an authorized arrest." In both *Bailey* and *Ortiz*, this court relying on *Johnson* found that mere probable cause was enough to justify a warrantless entry into the defendant's home.

The third district of this court questioned this rule in *People v. Wolgemuth* (1976), 43 Ill. App. 3d 335, 356 N.E.2d 1139. There the police went to the defendant's apartment and knocked. After receiving no response, the police had the apartment manager unlock the door and let them in. Upon entry, they found and arrested the defendant. The court ruled the entry would have been justified only under exceptional or exigent circumstances. Based upon the absence of such circumstances, the court held that the evidence seized as a result of the warrantless entry should have been suppressed and reversed the conviction. On appeal, the supreme court reversed the appellate court, finding the entry was not warrantless; that a warrant for the defendant's arrest had been issued in Iowa; and that this out-of-State warrant validated the entry. (*People v. Wolgemuth* (1977), 69 Ill. 2d 154, 160-61, 370 N.E.2d 1067, *cert. denied* (1978), 436 U.S. 908, 56 L. Ed. 2d 408, 98 S. Ct. 2243.) Without discussing the issue, the supreme court stated:

"(Although the United States Supreme Court has consistently reserved judgment on the constitutionality of a warrantless entry into a home to make an arrest absent exigent circumstances [citations], at least five Federal courts of appeal have acknowledged that such warrantless entries may be unconstitutional. [Citations.])" 69 Ill. 2d 154, 159-60.

Subsequent to the *Wolgemuth* decision, Illinois law as to whether exigent circumstances are necessary to justify a warrantless entry into one's home to effectuate an arrest remained uncertain. Some appellate courts required only probable cause (see *e.g., People v. Bailey; People v. Addison* (1st Dist. 1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025); others required more than mere probable cause (se, *e.g., People v. Abney* (4th Dist. 1978), 58 Ill. App. 3d 54, 373 N.E.2d 861, *appeal allowed* (1978), 71 Ill. 2d 603; *People v. Sanders* (3d Dist. 1978), 59 Ill. App. 3d 6, 374 N.E.2d 1315; *People v. Trull* (4th Dist. 1978), 64 Ill. App. 3d 385, 380 N.E.2d 1169);[1] still other appellate courts, noting these contrary views, based their decisions upon a finding of exigent circumstances but declined to specifically hold that exigent circumstances were a constitutional requirement (see, *e.g., People v. Bean* (1st Dist. 1979), 73 Ill. App. 3d 918, 392 N.E.2d 650 (leave to appeal has been filed but not yet decided); *People v. Taylor* (1st Dist. 1979), 68 Ill. App. 3d 776, 386 N.E.2d 555; *People v. Denwiddie* (3d Dist. 1977), 50 Ill. App. 3d 184, 365 N.E.2d 978).

Recently, the United States Supreme Court addressed the issue in *Payton v. New York* (1980), 445 U.S. ___, 63 L. Ed. 2d 639, 100 S. Ct. 1371. The court held that a warrantless, nonconsensual, nonexigent, daytime entry of a suspect's home for the purpose of effecting a routine felony arrest was a violation of one's constitutional rights under the fourth amendment of the United States Constitution. Interpreting the language of the fourth amendment, the court stated that it applied equally to seizures of persons as well as seizures of property. The court stressed the

---

[1] In determining whether "more than mere probable cause" existed, these cases relied on the considerations set forth in *Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385, 392-93. Summarily, those considerations include whether (1) the offense is a grave one, particularly one of violence, (2) the suspect is reasonably believed to be armed, (3) there exists a clear and reliable showing of probable cause that the suspect committed the crime involved, (4) there is strong reason to believe the suspect is in the premises to be entered, (5) there is a likelihood the suspect may escape if not swiftly seized, (6) the entry is made peaceably or forcibly, and (7) the entry occurs during the day or night. In *Dorman*, the court noted that a warrantless entry to search for weapons or contraband absent exigent circumstances is unconstitutional. The court reasoned that an entry to arrest and an entry to search for and seize property implicate the same interest in preserving the privacy and the sanctity of the home and justify the same level of constitutional protection. This reasoning was adopted in *United States v. Reed* (2d Cir. 1978), 572 F.2d 412, 423, *cert. denied* (1978), 439 U.S. 913, 58 L. Ed. 2d 259, 99 S. Ct. 283. The United States Supreme Court in *Payton v. New York* (1980), 445 U.S. ___, 63 L. Ed. 2d 639, 100 S. Ct. 1371, found the reasoning in both *Dorman* and *Reed* to be persuasive and in accord with its fourth amendment decisions.

"* * * overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic." (445 U.S. ___, ___, 63 L. Ed. 2d 639, 660, 100 S. Ct. 1371, 1388.) The court specifically held that "* * * the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643; *Wolf v. Colorado*, 338 U.S. 25, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." 445 U.S. ___, ___, 63 L. Ed. 2d 639, 644, 100 S. Ct. 1371, 1374-75.[2]

■■ It is undisputed that in the present case, the police entered the defendant's home, without a warrant, for the purpose of arresting him sometime between 5 and 6 a.m. The facts upon which the trial court based its finding that probable cause to arrest existed were facts known to the officers on November 20, 1976, yet the arrest was not made until November 27, 1976. The State did not argue, nor is there an indication in the record that exigent circumstances existed. Based on the record before us we can find no reason why a warrant to arrest and search was not obtained in this case. Certainly, in the absence of defendant's consent to the entry, *Payton* now mandates it.

### B.

Whether or not the defendant consented to the entry of the police is not clear from the record. The trial court, in its findings of fact, stated that the officers knocked, announced their office, and the defendant opened the door. The only officer to actually testify that defendant opened the door was standing at the front door with four or five other officers and was not among the first to enter the apartment. This same officer stated that when he entered the apartment, he saw the defendant standing in the living room, which testimony was contrary to that of the two arresting officers and the trial court's finding of fact that defendant was arrested and remained in the hallway. There was also testimony and the trial court found that other officers were waiting at the back door. Mere acquiescence to police authority does not necessarily establish consent. In *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041, the Supreme Court recognized consent to be an established exception to the search warrant requirement under the fourth amendment. In *Payton*, the Supreme Court found that the fourth amendment protects persons as well as objects and equated an entry to arrest with an entry to search. Thus it would seem that the standard of consent

---

[2] Subsequent to its decision, the Supreme Court (see 48 U.S.L.W. 3677) has granted certiorari, vacated judgments and remanded cases for further consideration in light of *Payton v. New York*. We note that among those cases is the Illinois case, *People v. Dunagan* (1979), 71 Ill. App. 3d 972, 389 N.E.2d 1261.

must be the same in either situation. In *Schneckloth*, the court found that the test for a valid consent is voluntariness under the totality of the circumstances. (412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2059.) From what we can determine from the record, the voluntariness of consent was apparently not made an issue at the trial court hearing. However, we need not resolve the consent issue because even assuming that the defendant consented to the entry, the State failed to show that the items were properly seized under the plain view doctrine.

## C.

As stated previously, the plain view exception applies only if the items seized were viewed from a place where the officers had a right to be. (*Harris v. United States* (1968), 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 88 S. Ct. 992; *People v. Holt* (1974), 18 Ill. App. 3d 10, 12, 309 N.E.2d 376.) The trial court found that defendant was arrested and remained in the hallway. The hallway was described as being somewhere between 6' by 6' to 6' by 12'. At the end of this hallway was a living room. The trial court found only that the items seized were in plain view *in the living room* on a footrest of a portable bar which was against a wall. The only officer to testify as to the location of this bar stated, "[a]t the end of the hallway as you entered the livingroom, on the immediate left, is a portable bar * * *." There is no testimony in the record nor did the trial court find that this bar could be seen from the hallway, the place where defendant was arrested and remained. There was testimony that one of the officers walked through the apartment to the back door to let the other officers in. There is an indication that in order to do so, the officer would have to pass through the living room and kitchen. Yet no justification for this intrusion into other rooms of the apartment was given. It is undisputed that the defendant did not resist the arrest. Further, no facts were adduced which might have justified a protective sweep of the apartment by the police. The State failed to sustain its burden of proving that the items seized without a warrant fell within the plain view exception.

## II.

■■ The State contends that the trial court erred in suppressing the defendant's palm print which was found at the scene of another rape where a common design and modus operandi could be demonstrated. Defendant initially challenges the State's right to appeal this order.

Article VI, section 6, of the Illinois Constitution of 1970 provides that the "Supreme Court may provide by rule for appeals to the Appellate Court from other than final judgments of Circuit Courts." The State's right to appeal in criminal cases is governed by Supreme Court Rule

604(a)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)(1)), which provides:
"In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; *or suppressing evidence.*" (Emphasis added.)

The question raised by the parties here is concerned only with whether the trial court's ruling was one "suppressing evidence" within the meaning of the Supreme Court Rule.

In *People v. Van De Rostyne* (1976), 63 Ill. 2d 364, 349 N.E.2d 16, our supreme court, noting the existence of divergent views as to the appealability of orders granting motions to suppress evidence under Rule 604(a)(1), discussed the meaning of the phrase "suppressing evidence." The court found that a motion to suppress evidence is a product of the exclusionary rule and is the method by which the constitutionality of the means used to obtain evidence is raised in advance of trial. The court drew a distinction between the suppression of evidence and its exclusion, citing *People v. Thady* (1971), 133 Ill. App. 2d 795, 270 N.E.2d 861, and *People v. Koch* (1973), 15 Ill. App. 3d 386, 304 N.E.2d 482, and stated that a motion to suppress was appropriate only where it was claimed that the evidence was illegally obtained. (63 Ill. 2d 364, 367-68; see also *People v. Alfano* (1980), 78 Ill. 2d 434, 444, 401 N.E.2d 554.) Its rule, the court stated, was not intended to give the State the right to an interlocutory appeal from every ruling excluding evidence offered by it.

The fourth district of this court in both *Thady* and *Koch* dismissed appeals brought by the State after finding that the orders appealed from were in fact evidentiary rulings. The court in *Thady* surmised that as a practical matter, every ruling sustaining an objection to evidence amounted to a suppression of that evidence and stated, "[i]f every such ruling were appealable, trials might last longer than the lifetimes of the parties * * *." (133 Ill. App. 2d 795, 797.) Other districts of this court, relying on the *Van De Rostyne* decision, have examined the substance of the motion regarding the admissibility of evidence and have dismissed the appeal when the evidence was excluded on evidentiary grounds and allowed appeals in cases where the evidence was suppressed on grounds that it had been unlawfully obtained. See *People v. Stuckey* (1st Dist. 1979), 78 Ill. App. 3d 1085, 398 N.E.2d 97; *People v. Young* (2d Dist. 1979), 76 Ill. App. 3d 210, 392 N.E.2d 790; *People v. Flatt* (3d Dist. 1979), 75 Ill. App. 3d 930, 394 N.E.2d 1049; *People v. Phipps* (4th Dist. 1979), 79 Ill. App. 3d 532, 398 N.E.2d 650; *People v. Jackson* (4th Dist. 1979), 67 Ill. App. 3d 24, 384 N.E.2d 591; *People v. Lara* (4th Dist. 1976), 44 Ill. App. 3d

116, 357 N.E.2d 1354 (these second and fourth district cases have restricted the meaning of the phrase "suppression of evidence" to those cases involving involuntary confessions or illegal searches and seizures).

The trial court's ruling in the present case prohibiting the State from using the defendant's palm print obtained from the scene of another rape was based upon the court's finding that the prejudicial effect of this evidence outweighed its probative value. This evidence was not "suppressed" as that term was intended by Supreme Court Rule 604(a)(1), rather its exclusion was based upon evidentiary grounds. Therefore, the State does not have a right to appeal this order.

In view of the foregoing, we affirm the order of the circuit court of Cook County suppressing evidence obtained from the defendant's apartment at the time of his arrest and dismiss the appeal from the circuit court's order excluding evidence recovered from the scene of another crime.

*Affirmed in part; dismissed in part.*

PERLIN, P. J., and HARTMAN, J., concur.